Lauri Mazzuchetti, Esq. (*pro hac vice application to follow*)
LMazzuchetti@kelleydrye.com
Michael Innes, Esq. (*pro hac vice application to follow*)
MInnes@kelleyDrye.com
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Phone: (973) 503-5900
Fax: (973) 503-5950

Todd L. Bice, Esq., Bar No. 4534
tlb@pisanellibice.com
Jordan T. Smith, Esq., Bar No. 12097
jts@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, NV 89101
Telephone:702.214.2100
Facsimile: 702.214.2101

*Attorneys for Defendant*
*Kohl's Department Stores, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Kirby Spencer, | Case No. **2:14-cv-01646-RFB-CWH** |
| Plaintiff, | |
| v. | |
| Kohl's Department Stores, Inc. | **DEFENDANT KOHL'S DEPARTMENT STORES INC.'S MOTION TO STAY ACTION** |
| Defendant. | |

NJ01\InneM\209696.1

1    Defendant Kohl's Department Stores, Inc. ("Kohl's"), by and through its

2    attorneys KELLEY DRYE & WARREN LLP and PISANELLI BICE PLLC,

3    respectfully submits this Motion and Memorandum of Law in support of its request

4    to stay this action pursuant to the doctrine of primary jurisdiction.[1]  In addition to

5    this Memorandum of Law, Kohl's relies on the accompanying Request for Judicial

6    Notice ("RJN"), and the Declaration of Mark Jolitz ("Jolitz Declaration").

7    **I.    INTRODUCTION AND STATEMENT OF FACTS**

8        Plaintiff Kirby Spencer ("Plaintiff") asserts against Kohl's a single claim

9    under the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 277.

10   Plaintiff alleges that beginning on or about June 18, 2014, he "began receiving

11   robocalls from Kohl's to his cell phone number." Compl., ¶ 11.  Plaintiff also

12   alleges that, by letter dated August 13, 2014, he contacted Kohl's "in an effort to

13   prevent" further calls.[2]  *Id.*, ¶ 21.  Plaintiff alleges that he last received a call from

14   Kohl's on August 31, 2014.  *Id.*, Exh. 1.  In addition, Plaintiff alleges that he has

15   never had an established business relationship with Kohl's and did not provide prior

16   express consent to receive such calls.  *Id.*, ¶¶ 12, 13.  In Exhibit 2 to the Complaint,

17   Plaintiff identified his telephone number to which the calls at issue were allegedly

18   placed as 702-324-3075 (the "3075 Number").  Compl., Exh. 2.

19       Kohl's records confirm that in July 2013, the 3075 Number was provided to

20   Kohl's by a one of its customers as the contact number associated with a Kohl's

21   private label credit card account, held by an individual with a name different from

22   Plaintiff's. Jolitz Decl., ¶ 9.  In connection with the issuance of a private label credit

---

23

24   [1] Kohl's and Plaintiff's Counsel have met and conferred regarding the substance and filing of the instant motion.

25   [2] In the letter attached to the Complaint as Exhibit 2, Plaintiff's Counsel demanded a

26   "settlement" of $172,500 to resolve the dispute regarding the alleged telephone calls, none of which were even answered by Plaintiff according to Exhibit 1 of his

27   Complaint.

28

1  card, a cardholder agrees to a Kohl's Cardmember Agreement and, in connection
2  therewith, provides a telephone number for Kohl's to call for account-related
3  purposes. *Id.*, at ¶4. A. In accordance with the terms of the Cardmember
4  Agreement, Kohl's places non-telemarketing, account-related calls to its Kohl's
5  private label credit card customers, including to remind customers when they have
6  an overdue credit card balance. *Id.*, ¶¶5 and 6, Exh. A at ¶18. Such informational
7  and debt collection calls are permitted under the TCPA because Kohl's cardholders
8  have consented to receive the calls at the telephone numbers that they opt to provide
9  to Kohl's in connection with their accounts.

10         Here, the challenged calls are all the result of this accepted arrangement,
11  except that the calls placed to Plaintiff's number were intended for another person –
12  the Kohl's account holder who provided the 3075 Number in connection with her
13  Kohl's Cardmember Agreement. *Id.*, at ¶9. Kohl's records reflect that in or about
14  June 2014, the Kohl's credit card account associated with the 3075 Number became
15  delinquent, and that Kohl's placed calls to the 3075 Number to inform its customer
16  of the overdue balance. *Id.*, at ¶10. These calls were intended for the Kohl's private
17  label credit card account holder who provided Kohl's with the 3075 Number. *Id.*
18  Immediately after receiving the letter from Plaintiff's counsel attached as Exhibit 2
19  to the Complaint, Kohl's removed the 3075 Number from the account with which it
20  was formerly associated. *Id.*, at ¶11. Kohl's records reflect that no calls were
21  placed to the 3075 Number following the receipt of the letter from Plaintiff's
22  counsel. *Id.*

23         Plaintiff claims that Kohl's should face extraordinary liability for otherwise
24  legal calls to a number that, unbeknownst to Kohl's, was either reassigned to
25  Plaintiff or incorrectly provided by its customer in the first instance. Not
26  surprisingly, such an anomalous result has created an uproar in the regulated
27  community. As a result, there are two petitions currently being considered by the
28  regulatory body that implements the TCPA, the Federal Communications

1   Commission (the "FCC"), to address: 1) the definition of "called parties" and the

2   establishment of safe harbors for wrong number non-telemarketing calls; and, 2) the

3   time period within which a company is expected to remove a wrong number from its

4   dialing lists upon notice. *See* RJN, Exhs. B and E. The FCC is expected to release

5   its opinion on these matters shortly.  If the FCC establishes a safe harbor and/or a

6   grace period within which companies may cease calls upon learning that they have a

7   wrong or reassigned number, Plaintiff's claim may not be actionable as a matter of

8   law.  Under the doctrine of primary jurisdiction, it is respectfully submitted that

9   these petitions should be decided before this Court addresses or permits discovery

10  on Plaintiff's claim.

11          The doctrine of primary jurisdiction is designed to stay cases, such as this

12  one, so that neither the Court nor the parties invest significant resources in

13  discovery, discovery disputes, or other motion practice until key questions

14  impacting the case are resolved.  In fact, a number of other federal courts have

15  stayed TCPA actions pending the FCC's resolution of these petitions.  *See Gusman*

16  *v. Comcast Corp.*, No. 13-cv-2014 WL 2115472, at *3-4 (S.D. Cal., May 21, 2014)

17  (in an action brought under the TCPA where the defendant attempted to collect on a

18  debt by calling a number that had been reassigned to the plaintiff, granting a stay

19  pending outcome of United Health care and ACA petitions); *Barrera v. Comcast*

20  *Holdings Corp.*, 2014 WL 1942829, at *34 (N.D. Cal. May 12, 2014) (same);

21  *Matlock v. United Healthcare*, No. 2:13–cv–02206, 2014 WL 1155541, at *1-2

22  (E.D. Cal. Mar. 20, 2014) (granting stay and denying Plaintiff's Motion to Certify

23  Class pending outcome of United Healthcare Petition); *Fontes v. Time Warner*

24  *Cable Inc.*, 14-2060, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) (declining

25  to address whether action should be stayed under the primary jurisdiction doctrine

26  but staying action on its own motion for 120 days pursuant to its inherent power to

27  control its docket).

28          Thus, as the petitions before the FCC necessarily implicate issues to be

1   decided by this Court and that will inform the scope of discovery (or determine
2   whether the case should proceed at all), it is respectfully submitted that this Court
3   should exercise its discretion to stay this action, either on grounds of primary
4   jurisdiction, and/or its own inherent power to control its docket.

5   **II.   THE LITIGATION SHOULD BE STAYED PENDING RESOLUTION**
6   **OF THE UNITED HEALTHCARE AND ACA PETITIONS**

7        **A.    The FCC is Expected To Rule In the Near Term**
8             **On Two Petitions That Will Directly Impact This Case**

9        On February 6, 2014, the FCC issued a public notice requesting comment on
10  a Petition for Expedited Declaratory Ruling filed by United Healthcare Services,
11  Inc. (the "United Healthcare Petition"), which asked the Commission to clarify the
12  applicability of the TCPA to "informational, non-telemarketing autodialed and
13  prerecorded calls to wireless numbers for which prior express consent has been
14  obtained but which, unbeknownst to the calling party, have subsequently been
15  reassigned from one wireless subscriber to another." RJN, at Exh. A.   The FCC
16  received comments, including a March 10, 2014 comment that requested that the
17  FCC to address a similar problem with wrong numbers – those that are not
18  reassigned, but were provided incorrectly by the customer in the first instance. *See*
19  *id.*, at Exh. C.  United Healthcare proposed a definition for "called party" under the
20  TCPA, as well as a good faith exception, that would protect a caller until it learns
21  that a customer-provided number is wrong and has had a reasonable opportunity to
22  correct its records. *See id.*, at Exh. B; *see also* RJN, Ex. C.

23       On February 11, 2014, ACA International ("ACA") filed a separate FCC
24  Petition for Rulemaking (the "ACA Petition") supporting the United Healthcare
25  Petition. *See id.*, at Exh. E.  The ACA Petition requested formal rulemaking on
26  similar issues.  The ACA Petition sought a ruling to "clarify that prior express
27  consent attaches to the person incurring a debt, and not the specific telephone
28  number provided by the debtor at the time a debt was incurred . . . ." *See id.*, at Exh.

1  E, at p.1.   The ACA Petition also requests a safe harbor for autodialed "wrong

2  number" non-telemarketing debt collections calls to wireless numbers. *See* RJN,

3  Exh. E, at 2.  The ACA Petition explains that the safe harbor is needed to provide

4  callers with a reasonable opportunity to comply with the rules and that without a

5  safe harbor, the TCPA is "'demand[ing] the impossible' from callers trying to

6  comply with the statute." *Id.*

7       Such a safe harbor is not unprecedented.  As the ACA Petition notes, the FCC

8  has previously established in 2004 a 15-day safe harbor for calls placed to wireless

9  numbers that had been ported from wireline service to wireless service.  Moreover,

10  in the case of telemarketing calls and "Do Not Call" requests, the FCC provides

11  telemarketers with a reasonable amount of time (30 days) to implement such

12  requests and to add numbers to internal DNC lists.  ACA urges the FCC to create a

13  similar safe harbor once callers become aware that a number is a wrong number.

14  *Id.* at 16.

15       It is anticipated that the FCC will issue an order in the near term on the

16  pending Petitions.  Indeed, on August 1, 2014, more than a dozen members of

17  Congress made a request to the FCC for a swift resolution of these issues, noting

18  that the TCPA is being "unfairly applied with great unintended consequences" to

19  non-telemarketing calls. *See*, RJN, Ex. F.   Rather than its intended application,

20  these members of Congress noted that the TCPA "has turned a vehicle to protect

21  consumers from unwanted random solicitations into a booming practice for

22  opportunistic attorneys to take advantage of ambiguous rules and profit personally

23  by receiving millions of dollars by suing businesses and overburdening the courts

24  while providing only nominal relief to their clients." *Id.*

25       In addition, on September 26, 2014, in a separate TCPA case involving wrong

26  number allegations pending before the United States District Court for the Northern

27  District of California, the FCC submitted a Status Report at the request of the Court

28  on the United Healthcare and ACA Petitions. *Id.*, at Exh. G.  The FCC's Status

1    Report indicated that the Commission has made substantial progress and is currently
2    in the process of formulating recommendations on the pending petitions that will be
3    presented to the FCC's commissioners for a vote.

4         As set forth above, if the FCC accepts either of the positions set forth in the
5    pending Petitions, the calls allegedly placed to Plaintiff collection calls may not be
6    actionable.

7    **B.**     **The Court Should Stay This Case**
8           **Under the Primary Jurisdiction Doctrine**

9         **1.**     **The Primary Jurisdiction Doctrine**

10        The primary jurisdiction doctrine "is a prudential doctrine under which courts
11   may, under appropriate circumstances, determine that the initial decision-making
12   responsibility should be performed by the relevant agency rather than the courts."
13   *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir.
14   2002).  The doctrine allows courts to determine that "an otherwise cognizable claim
15   implicates technically and policy questions that should be addressed in the first
16   instance by the agency with regulatory authority over the relevant industry rather
17   than by the judicial branch." *Id.*; *see also Brown v. MCI WorldCom Network Servs.*,
18   277 F.3d 1166, 1172 (9th Cir. 2002) (the primary jurisdiction doctrine applies where
19   a claim requires resolution of an issue of first impression, or of a particularly
20   complicated issue that Congress has committed to a regulatory agency).

21        This Court is empowered to stay this litigation or dismiss the Plaintiff's
22   Complaint without prejudice "pending the resolution of an issue within the special
23   competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d
24   1110, 1114 (9th Cir. 2008) (affirming dismissal of plaintiff's complaint and
25   referring issue to the FCC).

26        **2.**     **The Primary Jurisdiction Doctrine Applies**
             **To the Allegations in Plaintiff's Complaint**

27
28        "In situations where an agency's pending decision applies to the precise issue

1 presented by the litigation, application of the primary jurisdiction to stay the case is

2 appropriate." *Barrerra v. Comcast Holdings Corp.*, No. 3:14-cv-00343, 2014 WL

3 1942829, at *3 (N.D. Cal. Sep. 18, 2014); *Hart v. Comcast of Alameda*, No. C 07-

4 6350, 2008 WL 2610787, *2 (N.D. Cal. June 25, 2008) (staying case on primary

5 jurisdiction grounds where FCC had announced it would seek public comment on

6 two separate petitions).  While there are no necessary factors that this Court must

7 consider, "courts in considering the issue have traditionally employed such factors

8 as (1) the need to resolve an issue that (2) has been placed by Congress within the

9 jurisdiction of an administrative body having regulatory authority (3) pursuant to a

10 statute that subjects an industry or activity to a comprehensive regulatory authority

11 that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781.

12      All of these factors are present here.  First, Plaintiff's entire case rests upon

13 the FCC's determination of the issues presented in the United Healthcare and ACA

14 Petitions – (a) whether the TCPA is violated by calls to a cellular telephone number

15 for which prior consent existed, but that has been subsequently reassigned or was

16 wrongly provided in the first instance; (b) whether there is a grace period within

17 which companies may cease calls upon learning that they have a wrong or

18 reassigned number.

19      Second, there is no question that "Congress has delegated the FCC with the

20 authority to make rules and regulations to implement the TCPA." *Satterfield v.*

21 *Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009); *see also Barrerra*, 2014

22 WL 1942829, at *3 (staying TCPA litigation pending resolution of United

23 Healthcare and ACA Petitions finding that "Congress has placed the uniform

24 interpretation and comprehensive enforcement of the TCPA within the primary

25 jurisdiction of the FCC").  Third, the TCPA subjects the "industry to a

26 comprehensive regulatory scheme that requires expertise or uniformity in

27 administration." *Matlock*, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014).

28 Last, a stay of this case would promote "uniformity in the administration of the

NJ01\InneM\209696.1

7

1    TCPA because a central issue presented in this case – whether liability under the

2    TCPA attaches for non-telemarketing calls placed to reassigned or wrong wireless

3    telephone numbers – is already under submission before the FCC in two pending

4    petitions." *Barrera*, 2014 WL 1932829, at *3.

5         Finally, a stay is necessary to prevent inconsistent rulings. There is presently

6    significant disagreement among courts regarding whether a "called party" is the

7    actual recipient or the intended recipient, which should further counsel a stay of

8    these proceedings to avoid additional inconsistent rulings. *See, e.g., Cellco*

9    *Partnership v. Wilcrest Health Care Mgmt. Inc.*, No. 09-cv-3534, 2012 WL

10   1630856, at *7 (D.N.J. May 8, 2012) ("A burgeoning body of case law establishes

11   that only the "called party," *i.e.,* the "intended recipient," has statutory standing to

12   bring suit under the TCPA."; *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12–cv–

13   1721, 2014 WL 1744136, at *11 (S.D. Cal. Apr. 30, 2014) (no liability for wrong

14   number because "it would be incongruous with the larger statutory and regulatory

15   scheme to interpret TCPA to require that a debt collector be liable for acting where

16   it had a good-faith basis for doing so"); *Leyse v. Bank of America*, No. 09-cv-7654,

17   2010 WL 2382400, at *4-6 (S.D.N.Y. June 14, 2010) (unintended recipient of a call

18   was not the "called party" under the TCPA); *Olney v. Progressive Cas. Inc. Co.*, No.

19   3:13–cv–2058, 2014 WL 294498, at *3 (S.D. Cal. Jan. 24, 2014) ("called party" is

20   not limited to "intended recipient"); *Soppet v. Enhanced Recovery Company LLC*,

21   679 F.3d 637, 643 (7th Cir. 2012) (noting that the FCC has not made a

22   determination with respect to "called party" and holding that "called party" under

23   the TCPA "means the person subscribing to the called number at the time the call is

24   made."). The issue is ripe for determination by the FCC, and it is sensible for this

25   action to be stayed pending a final determination of just how this split in authority

26   should be resolved.

27        **C.    Numerous Other Courts Have Issued Stays In Similar Cases**

28             As set forth above, a number of other federal courts have stayed TCPA

1    actions pending the FCC's resolution of the United Healthcare and ACA Petitions.

2    *See Gusman v. Comcast Corp.*, No. 13-cv-2014 WL 2115472, at *3-4 (S.D. Cal.,

3    May 21, 2014) (in an action brought under the TCPA where the defendant attempted

4    to collect on a debt by calling a number that had been reassigned to the plaintiff,

5    granting a stay pending outcome of United Health care and ACA petitions); *Barrera*

6    *v. Comcast Holdings Corp.*, 2014 WL 1942829, at *34 (N.D. Cal. May 12, 2014)

7    (same); *Matlock v. United Healthcare*, No. 2:13–cv–02206, 2014 WL 1155541, at

8    *1-2 (E.D. Cal. Mar. 20, 2014) (granting stay and denying Plaintiff's Motion to

9    Certify Class pending outcome of United Healthcare Petition); *Fontes v. Time*

10   *Warner Cable Inc.*, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) (declining to

11   address whether action should be stayed under the primary jurisdiction doctrine but

12   staying action on its own motion for 120 days pursuant to its inherent power to

13   control its docket).  Kohl's respectfully requests that this Court grant the same relief

14   here.

15   …

16   …

17   …

18

19

20

21

22

23

24

25

26

27

28

## III.   **CONCLUSION**

The claims asserted in Plaintiff's Complaint will be directly impacted by the pending FCC petitions described above.  Given that the FCC is poised to act on the issue, and that there is no question that the FCC has primary jurisdiction with regard to the interpretation of the law under which Plaintiff seeks recovery, this action should be stayed until the FCC resolves these petitions, or until a reasonable time has passed to allow the FCC to express its opinion.  Kohl's respectfully requests that the Court grant the instant motion.

Dated:        December 24, 2014

PISANELLI BICE PLLC


By: /s/ Jordan T. Smith_____
        Todd L. Bice, Esq., Bar No. 4534
        Jordan T. Smith, Esq., Bar No. 12097
        400 South 7th Street, Suite 300
        Las Vegas, NV  89101

        Lauri Mazzuchetti, Esq. (*pro hac vice application to follow*)
        Michael Innes, Esq. (*pro hac vice application to follow*)
        KELLEY DRYE & WARREN LLP
        200 Kimball Drive
        Parsippany, New Jersey 07054
        Phone: (973) 503-5900
        Fax: (973) 503-5950

        *Attorneys for Defendant*
        *Kohl's Department Stores, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice, PLLC, and that on this 24th day of December, 2014, I caused to be served the foregoing **DEFENDANT KOHL'S DEPARTMENT STORES INC.'S MOTION TO STAY ACTION** via electronic mail through the United States District Court's CM/ECF system.


_____/s/ Shannon Thomas_____
An employee of Pisanelli Bice, PLLC