Lauri Mazzuchetti, Esq. (*pro vac vice*)
LMazzuchetti@kelleydrye.com
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950

Craig R. Anderson, Esq.
Nevada Bar No. 6882
canderson@maclaw.com
Brianna Smith, Esq.
Nevada Bar No. 11795
bsmith@maclaw.com
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816

*Attorneys for Defendant
Kohl's Department Stores, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KIRBY SPENCER, | Case No. 2:14-CV-01646-RFB-CWH |
| Plaintiff, | |
| v. | Hon. Richard F. Boulware, II |
| Kohl's Department Stores, Inc., | Magistrate Judge Carl W. Hoffman |
| Defendant. | |

**DEFENDANT KOHL'S DEPARTMENT STORES, INC.'S MOTION TO STAY ACTION**

248279

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") recently heard oral argument on a case the outcome of which will significantly impact the viability of Telephone Consumer Protection Act claims, such as those raised by the plaintiff here, premised on an alleged call to a "reassigned number" (*i.e.*, a number that the defendant had permission to call, but which, unbeknownst to the caller, now was being used by someone other than the person who gave that permission). For that reason, Kohl's Department Stores, Inc. ("Kohl's"), by and through its undersigned counsel, respectfully submits this Memorandum of Points and Authority in support of its Motion to Stay this action pursuant to this Court's inherent authority, until the D.C. Circuit issues its decision. In addition to this Memorandum of Points and Authorities, Kohl's relies on the accompanying Request for Judicial Notice ("RJN"), and the Declaration of Mark Jolitz ("Jolitz Declaration") (ECF No. 11).[1]

## II. PRELIMINARY STATEMENT

Kohl's placed non-telemarketing calls regarding a past-due credit card balance to a telephone number provided by its credit card customer. The person Kohl's intended to call was its customer who had given Kohl's consent to call. However, rather than reaching the consenting Kohl's customer, Kohl's allegedly reached plaintiff Kirby Spencer ("Plaintiff"). Plaintiff sued Kohl's for allegedly violating the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by calling his cellular telephone without his prior express written consent. Kohl's denies that it violated the TCPA, or any other law, based on the allegations of the Complaint.

The D.C. Circuit is actively reviewing an Omnibus Declaratory Ruling and Order

---

[1] Kohl's and Plaintiff's Counsel have met and conferred pursuant to Local Rule 26-7(c) regarding the substance and filing of the instant motion.

248279                                    1

("Declaratory Ruling") issued by the Federal Communication Commission ("FCC") on July 10, 2015, and is expected to rule on several issues, including two at the heart of this action: (1) whether the statutory term "called party" under the TCPA includes the "intended recipient" of a telephone call; and (2) whether a safe harbor exemption for unintentionally calling the wrong person is limited only to the first such call or extends also to other calls. Resolution of these two issues by the D.C. Circuit will bear directly on whether the TCPA imposes potential liability on Kohl's under the facts alleged in this case. If the D.C. Circuit holds that the statutory term "called party" means the intended recipient of the call, even if Kohl's unintentionally reached someone else, or that the safe harbor provision extends beyond the first call, then Kohl's will have a complete defense to Plaintiff's claims.

The D.C. Circuit has exclusive jurisdiction pursuant to the Administrative Procedures Act, 47 U.S.C. § 402(a), to vacate the FCC's Declaratory Ruling. The Court should stay this action, pursuant to its inherent power to control its docket, in order to provide time for the D.C. Circuit to rule on issues that may dispose of this action. The D.C. Circuit held oral argument in this matter on October 19, 2016, and a decision is expected at any time. Absent a stay, the parties and the Court will not have the benefit of the D.C. Circuit's opinion before expending significant resources on the remainder of discovery and any dispositive motions.

For the reasons set forth below, Defendant requests that the Court stay this action pending a ruling by the D.C. Circuit.

### III. STATEMENT OF FACTS

#### A. The Calls to Plaintiff's Alleged Telephone Number.

Plaintiff asserts against Kohl's a single claim under the TCPA. Plaintiff alleges that beginning on or about June 18, 2014, he "began receiving robocalls from Kohl's to his

cell phone number." Compl., ¶ 11. (ECF No. 1.) Plaintiff also alleges that, by letter dated August 13, 2014, he contacted Kohl's "in an effort to prevent" further calls.[2] *Id.*, ¶ 21. He alleges that he last received a call from Kohl's on August 31, 2014. *Id.*, Exh. 1. In Exhibit 2 to the Complaint, Plaintiff identified his telephone number to which the calls at issue were allegedly placed as ending in 3075 (the "3075 Number"). Compl., Exh. 2.

Kohl's records confirm that in July 2013, the 3075 Number was provided to Kohl's by a one of its customers — not Plaintiff — as the contact number associated with a Kohl's private label credit card account. Jolitz Decl., ¶ 9. In connection with the issuance of a private label credit card, a cardholder must agree to a Kohl's Cardmember Agreement and, in connection therewith, must provide a telephone number for Kohl's to call for account-related purposes. *Id.*, at ¶ 4, Exh. A. (ECF No. 12.) In accordance with the terms of the Cardmember Agreement, Kohl's places non-telemarketing, account-related calls to its Kohl's private label credit card customers, including to remind customers when they have an overdue credit card balance. *Id.*, ¶¶ 5 and 6, Exh. A at ¶ 18. Such informational and debt collection calls are permitted under the TCPA because Kohl's cardholders have consented to receive the calls at the telephone numbers that they opt to provide to Kohl's in connection with their accounts.

Here, all the challenged calls were made pursuant to this accepted arrangement. Kohl's records reflect that in or about June 2014, the Kohl's credit card account holder who provided the 3075 Number became delinquent, and Kohl's placed calls to the 3075 Number to inform its customer of the overdue balance. *Id.*, at ¶ 10. Promptly after receiving the letter from Plaintiff's counsel attached as Exhibit 2 to the Complaint, Kohl's removed the 3075 Number from the account with which it was formerly associated. *Id.*, at

---

[2] In the letter attached to the Complaint as Exhibit 2, Plaintiff's Counsel demanded a "settlement" of $172,500 to resolve the dispute regarding the alleged telephone calls, none of which were even answered by Plaintiff according to Exhibit 1 of his Complaint.

248279                                3

¶ 11. Kohl's records reflect that no calls were placed to the 3075 Number following the receipt of the letter from Plaintiff's counsel. *Id.*

Plaintiff claims that Kohl's should face extraordinary liability for otherwise legal calls to a number that, unbeknownst to Kohl's, was either reassigned to Plaintiff or incorrectly provided by its customer in the first instance. But Kohl's had no knowledge — and no reasonable way to know — at the time it called the 3075 Number that it had either been reassigned to Plaintiff or was incorrectly (or falsely) provided by the Cardholder. Kohl's had no reason to call Plaintiff about a debt owed by someone else.

Kohl's contends that it lawfully obtained prior express consent from the Cardholder to place the calls at issue in compliance with the TCPA.

### B. The July 2015 FCC Declaratory Ruling and the Pending D.C. Circuit Appeal.

The TCPA prohibits a caller from using an autodialer to place non-emergency phone calls to a cellular telephone number without the "called party's" prior express consent. 47 U.S.C. § 227(b)(1). On July 10, 2015, the FCC released its Declaratory Ruling, which addressed, among other things, the TCPA's exemption from liability for calls "made with the prior express consent of the called party."

First, the FCC considered whether the statutory term "called party" includes an original subscriber to a cell phone number who provided his/her telephone number to a caller, consented to receive calls, and was the intended recipient of calls, even if the cell phone number had been subsequently reassigned to a new subscriber without the caller's knowledge. RJN, Exh. A (Declaratory Ruling and Order at ¶¶ 71-84). Second, the FCC considered, irrespective of who is included in the definition of "called party," whether a safe harbor exists for callers who call a cell phone number when the caller had obtained consent to call from the previous subscriber and did not know the cell phone number had been reassigned. *Id.* at ¶¶ 85-92.

The FCC concluded in its Declaratory Ruling that the statutory term "called party" means the "subscriber and customary user" of a cellular telephone number – not the "intended recipient" of a call. *Id.* at ¶¶ 74, 78. The FCC concluded that there exists a limited safe harbor (*i.e.*, no TCPA liability) for the *first* call that a caller places to a reassigned cell phone number when the caller does not know or suspect the number has been reassigned. *Id.* at ¶¶ 88-92. According to the FCC, however, any subsequent calls after the first will incur TCPA liability.

The FCC Commissioners were sharply divided on these issues. Two of the five Commissioners vehemently dissented, expressing the view that the majority's holdings are not in accordance with the spirit of TCPA. Commissioner Pai, for example, explained that the "called party" with standing to bring suit under the TCPA should be the expected recipient, not the actual recipient of a call, so that when a company is trying to reach its own customer at a telephone number provided by that customer, liability under the TCPA for calls unknowingly made to a new owner of that phone number will not attach unless and until the company learns of the reassignment (*i.e.*, by the new owner providing notice). RJN, Exh. A (Declaratory Ruling and Order (Pai Dissent) at pp. 112-123); *see id.* at 118 ("Interpreting the term "called party" to mean the expected recipient — that is, the party expected to answer the call — is by far the best reading of the statute."); *id.* at 120 ("In contrast, the Order's strict liability interpretation chills such communications [with customers] by threatening a company with crippling liability even if it reasonably expects to reach a consenting consumer when making a call. It is difficult to see how chilling desired communications in this manner is narrowly tailored to serve the government's legitimate, content-neutral interests.").

Commissioner O'Reilly's dissent argued that the majority was wrong with respect to claims involving so-called "recycled" (reassigned) numbers, and further details why the safe harbor of just one exempt call that the Order provided is insufficient and unreasonable. RJN, Exh. A (Declaratory Ruling and Order (O'Rielly Dissent) at pp. 124-

138); *see id.* at 131 ("The record shows that one free pass is particularly problematic for informational texts, such as reminders, where no response is expected or routinely provided. In those cases, companies will use up the free pass and still have zero indication as to whether they reached the right number. Some may have no choice but to discontinue the texts. That risks angering consumers that had specifically requested texts, for example, to remind them to pay a monthly bill, but then miss a payment because they didn't get a reminder. Moreover, the idea that, after one call, a caller would have 'constructive knowledge' that a number has been reassigned—even if there was no response—is absolutely ludicrous.").

After the FCC released its Declaratory Ruling, nine companies filed petitions in the D.C. Circuit seeking review of the FCC's Declaratory Ruling. RJN, Exh. B (docket sheet for *ACA Int'l v. Fed. Commc'ns Comm.*, No. 15-1211 (D.C. Cir. 2015)). These petitions were consolidated. *In Re: Federal Communications Commission, In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling and Order, FCC 15-72, Released July 10, 2015*, MCP No. 134 (J.P.M.L. July 24, 2015), Consolidation Order. They all request that the D.C. Circuit vacate the FCC's Declaratory Ruling on the issues of potential liability for calls to reassigned cell phone numbers. *See, e.g.*, RJN, Exh. C (ACA's Am. Pet. for Review, at pp. 4 to 5, *ACA Int'l v. Fed. Commnc'ns Comm.*, No. 15-1211 (D.C. Cir. July 13, 2015)). Notably, the petitioners seek relief from the FCC's Declaratory Ruling pursuant to the Hobbs Act, 28 U.S.C. §§ 2341 *et seq. Id.* (ACA's Am. Pet. for Review at p. 2). That statute sets forth the procedural process one must follow to "enjoin, set aside, annul, or suspend any order of the [FCC]" under the Communications Act of 1934, 47 U.S.C. § 402(a), and provides that challenges to FCC orders must be made directly to a court of appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a).

Briefing on the petitions was completed in February 2016. RJN, Exh. D (Order, No. 15-1211 at 1-2 (D.C. Cir. Oct. 13, 2015)). Oral argument took place on October 19,

248279

6

2016. RJN, Exh. E (October 19, 2016 Tr., No. 15-1211).  At oral argument, the panel strongly questioned the FCC's determinations on these issues.  Each member of the panel indicated disagreement with the FCC's limitation of the safe harbor to one phone call, regardless of whether the caller received actual notice that the number had been reassigned. *Id.* at 103:2-8 (reiterating a previous question regarding Congressional intent where a caller has no notice that a number has been reassigned) (Edwards, J.); 103:17-22 ("Congress intended that automated calls can be made in the circumstances of consent. . . . [where the caller has no notice of reassignment] the caller acting entirely in good faith believes that its making a call or sending a text that Congress wanted to have happen . . . .") (Srinivasan, J.); 113:19-22 ("it's even harder to see in a text context how are you going to use that safe harbor call to actually get information about whether the person is consenting?") (Pillard, J.)).  Judge Edwards openly disagreed with the FCC's contention that callers could avoid liability notwithstanding the limited safe harbor by repeatedly seeking re-confirmation of consent:

> You know in all due respect, I think there are probably a lot of business people out there saying, is he kidding me.  It's not as straightforward as you're saying with some of these large businesses and numbers that they are talking about.  It sounds interesting, but I think they would say that that's totally folly.  That isn't the way we operate reasonably, assuming they have the right to operate.  It's just not a viable suggestion.  It really isn't.  I mean and the business people are involved, I realize it's a consumer statute but the statute does pay some attention to the needs of people in the business community, and those suggestions seem silly to me.  That isn't the way they are going to operate.

*Id.* at 108:16-109:3.  Judge Srinivasan noted that the FCC's extremely limited safe harbor would have the effect of chilling desired speech that consumer's had actually requested:

> Judge Srinivasan: [I]t's not as if there's no social cost to the allocation of risk that you would impose because the statute understandably presupposes that some people are going to want to receive text messages.
>
> Judge Edwards: Right.

> Judge Srinivasan: And if your rule creates the incentive on callers to stop doing that because they're worried that the number might have been reassigned, then an affirmative good that the statute is trying to achieve would not be achieved because the callers are going to withhold making the calls.

*Id.* at 111:12-25. In all, the FCC faced skeptical questioning regarding the Declaratory Ruling. The D.C. Circuit has not requested any further briefing or argument prior to issuing its decision.

### IV. PROCEDURAL HISTORY

On September 15, 2015, Plaintiff filed his First Amended Class Action Complaint (ECF No. 51), and on September 29, 2015, Defendant filed its Answer to Plaintiff's First Amended Class Action Complaint. (ECF No. 52.) On November 25, 2015, the Court entered an Order setting a discovery deadline of May 3, 2016, a deadline for Plaintiff to file a motion for class certification of May 27, 2016, and a deadline to file dispositive motions 60 days after the Court's ruling on the motion for class certification. (ECF No. 55.) On March 2, 2016, pursuant to the request of the Parties, the Court entered an Order extending the discovery deadline to July 8, 2016 and the deadline to file a motion for class certification to August 2, 2016. (ECF No. 59.)

On July 8, 2016, after a Motion to Transfer had been fled in a different case before the Joint Panel on Multidistrict Litigation, the Parties filed a Joint Motion to Stay Proceedings (ECF No. 62), noting that discovery would not be completed by the July 8, 2016 deadline and requesting that the case be stayed pending resolution of the Motion to Transfer by the JPML. On July 13, 2016, the Court granted the Parties' Joint Motion and stayed the case pending the ruling by the JPML. (ECF No. 63.) On October 4, 2016, the JPML issued an order denying transfer of this case and the other TCPA cases pending against Defendant. On October 18, 2016, the Court entered an Order requiring that the Parties submit a proposed discovery plan and scheduling order by October 31, 2016. (ECF No. 66.)

On October 31, 2016, the Parties submitted a Joint Status Report and Proposed Scheduling Order, noting that Defendant planned to file this Motion to Stay proceedings. (ECF No. 69.) On November 1, 2016, this Court entered an Order extending the discovery deadline to April 28, 2017, and the deadline to file a motion for class certification to May 26, 2017. (ECF No. 70.)

## V. ARGUMENT

This action should be stayed to allow the D.C. Circuit to rule on a matter that directly impacts this action. Should the D.C. Circuit hold that the statutory term "called party" means the intended recipient of the call, or that the safe harbor provision extends beyond the first call, then Kohl's will have a complete defense to Plaintiff's claims. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). This power includes the authority to stay a case pending the resolution of litigation in another forum that involves similar, potentially controlling, issues. *See, e.g., Jiangmen Kinwai Furniture Decoration Co. v. Kinwai USA Inc.*, No. 2:15-CV-01419-JCM-CWH, 2015 U.S. Dist. LEXIS 165660 (D. Nev. Dec. 9, 2015) (granting a motion to stay pending the outcome of litigation in the Middle District of North Carolina).

"The Ninth Circuit has held that a stay pending resolution of an independent proceeding which bears upon the case is appropriate regardless of whether the separate proceedings are judicial administrative, or arbitral in nature." *KBW Assocs. v. Jaynes Corp.*, No. 2:13-CV-01771-GMN-CWH, 2015 U.S. Dist. LEXIS 18220, at *10 (D. Nev. Feb. 13, 2015) (quoting *Levya v. Certified Grovers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979)). Such a stay "should not be granted unless it appears that likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims." *Levya*, 593 F.2d at 864.

Courts generally consider three factors in determining whether a stay should be granted: "(1) the possible damages which may result from a stay, (2) the hardship or inequity which a party may suffer in being require to go forward, and (3) the orderly course of justice measured in terms of simplifying or complicating the issues, proof, and questions of law which could be expected from a stay." *KBW Assocs.*, 2015 U.S. Dist. LEXIS 18220, at *9 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). Here, each of these factors weighs in favor of granting a stay.

### A. The Stay Should Be Granted Because The D.C. Circuit Appeal Will Be Concluded Within A Reasonable Time.

As the Court noted in *Levya*, a stay should not be granted unless the other proceedings will be concluded within a reasonable time. Here, the matter before the D.C. Circuit has already been briefed and oral argument has been completed. Any additional delay will be insubstantial since this matter would only be stayed until the D.C. Circuit renders a decision. *See Ricks v. Allied Interstate, LLC.*, No. 3:16-cv-00205-HES-PDB, 2016 WL 4505173, at *2 (M.D. Fla. July 11, 2016) (granting similar motion to stay and noting that because the matter has been fully briefed the stay will likely not be lengthy).

Since a modified scheduling order was just entered into on November 1, 2016, there is no prejudice to Plaintiff in continuing to stay this action until a decision has been reached.

### B. Plaintiff Will Not Suffer Any Damages Or Hardship By Staying This Matter.

Plaintiff will suffer no undue prejudice or tactical disadvantage from a stay of the proceedings. Plaintiff does not claim that he continues to receive telephone calls from any telephone number registered to Kohl's, so there is no risk of allegedly ongoing harm. Moreover, since this case was just recently stayed in July, via a joint motion, Plaintiff will not be harmed by staying this matter again.

248279

10

### C. A Stay Pending The D.C. Circuit's Ruling Will Simplify The Issues (If Any) To Be Litigated.

While the FCC has primary jurisdiction to offer interpretations of the TCPA, it by no means provides the final adjudication. Indeed, under 28 U.S.C. § 2342, the federal Courts of Appeal have exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or determine the validity of all final orders issued by the FCC. As stated above, Petitioners in the D.C. Circuit are challenging the FCC's treatment of reassigned numbers as a "called party" and provision of one-call safe harbor exemption for calls to reassigned numbers. *See, e.g.*, RJN, Exhs. F through H (Selected Petitioners' Statements of Issues To Be Raised in Consolidated Appeals). On both issues, Petitioners contend that the July 2015 Order is arbitrary and capricious, an abuse of discretion, in excess of the FCC's statutory authority, and contrary to the Constitution and other laws. *Id.*

If the D.C. Circuit holds that the statutory term "called party" means the intended recipient of the call, or that the safe harbor provision extends beyond the first call, then Kohl's will have a complete defense to Plaintiff's claims. Plaintiff should then dismiss his claim voluntarily, or the parties and the Court will proceed with a clearer understanding of the law on this primary issue in this case. As stated above, Kohl's intended to call the cardholder who provided the 3075 Number in connection with her Kohl's Cardmember Agreement. Kohl's had no knowledge – and no reasonable way to know – at the time it called the 3075 Number that it had been reassigned to Plaintiff or was falsely provided by the Cardholder. By addressing whether Kohl's may defend itself on this highly individualized basis, the D.C. Circuit's ruling will clarify and simplify the issues to be litigated (if any) regarding the calls allegedly received by Plaintiff and/or the absent class. Kohl's will assert that the issues pending before the D.C. Circuit's ruling should significantly constrain, if not outright defeat, the size and scope of the discovery that may be relevant to the simplified claim.

Because Kohl's will raise the same issues that are pending before the D.C. Circuit, if this matter is not stayed and the D.C. Circuit vacates the Declaratory Ruling, the Court may have to revisit its rulings to the extent they conflict with the D.C. Circuit's ultimate ruling. For that reason, allowing the D.C. Circuit to conclude the appeal would promote judicial efficiency. *See Trs. of the Elec. Workers Health & Welfare Trust v. F.A.S.T. Sys.*, No. 2:12-CV-00148-JCM-CWH, 2013 U.S. Dist. LEXIS 15475 (D. Nev. Feb. 5, 2013) (noting that granting a motion to stay pending the outcome of a state case will promote judicial efficiency). Staying this case pending resolution of the D.C. Circuit appeal will ensure a uniform, national interpretation of these important TCPA issues.

Thus, as the consolidated Petitions directly address issues to be decided by this Court, and also inform the scope of discovery (or whether the case should proceed at all), it is respectfully submitted that this Court should invoke its own inherent power to control its docket and stay this action pending a ruling by the D.C. Circuit.

### D. Other Courts Have Not Hesitated To Grant This Exact Relief.

Staying this case pending resolution of the D.C. Circuit appeal will ensure a uniform, national interpretation of these important TCPA issues. Indeed, numerous courts around the country have granted similar motions to stay in TCPA cases, awaiting either the end of the FCC proceedings or the completion of the D.C. Circuit appeal. *See, e.g., Coatney v. Synchrony Bank,* No. 6:16-cv-3389-Orl-22TBS, 2016 WL 4506315, at *2 (M.D. Fla., Aug. 2, 2016) (granting stay pending outcome of *ACA International* D.C. Circuit appeal); *Ricks*, 2016 WL 4505173 at *2 (collecting cases); *Gensel v. Performant Techs., Inc.*, No. 2:13-CV-01196-RTR, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015) (maintaining stay of TCPA case in deference to ongoing *ACA International* D.C. Circuit appeal); *Miller v. Directv, LLC*, No. 2:14-cv-07579-DMG-E (C.D. Cal. August 7, 2015) (same).[3]

---

[3] *See also Pickens v. Am. Credit Acceptance, LLC*, 2014 WL 4662512, at *2 (S.D.

On December 17, 2015, a California Federal District Court stayed a case with a nearly identical fact pattern to this one. *See Fontes v. Time Warner Cable Inc.*, No. CV 14-2060 (C.D. Cal. December 17, 2015).[4]  There, as here, the defendant placed non-telemarketing calls to telephone numbers provided by its customers regarding past due account balances. When placing those calls, however, the defendant reached persons other than those that opened their accounts and provided their consent to be called. Defendant moved to stay that action pending the D.C. Circuit's consideration of the FCC's interpretation of the term "called party" and creation of the one call safe harbor exemption. In granting the defendant's motion, the Court held that "if the Court of Appeals were to find that the FCC had reached the wrong conclusion at [sic] to [either] of these issues that could potentially be dispositive of the outcome of this case" and, as such, it was "prudent to await further guidance from the D.C. Circuit." RJN, Exh. I (Minute Order in *Fontes*, at p. 7 of 9).

Here, just as in *Fontes*, the D.C. Circuit's finding as to the definition of a "called party" or the scope of the one-time safe harbor exemption are potentially case dispositive. As such, Kohl's respectfully requests that this Court, like *Coatney, Ricks, Fontes, Gensel,* and *Miller*, invoke its prudential authority and stay this action pending resolution of the appeal.

---

Ala. Sept. 19 2014) (staying TCPA case in deference to FCC's pending rulings interpreting the statutory term "called party"); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14-CV-00514-MCE-KJN, 2014 WL 4187250, at *2-3 (E.D. Cal. Aug. 20, 2014) (staying TCPA case pending FCC ruling interpreting "prior express consent"); *Higginbotham v. Hollins*, No. 14-CV-2087-JTM-TJJ, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014) (staying TCPA case pending FCC ruling on TCPA issues); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624-JTM-JPO, 2014 WL 1930885, at *3-4 (D. Kan. May 14, 2014) (same).

[4]   RJN, Exh. I (copy of Minute Order in *Fontes v. Time Warner Cable Inc.*, CV 14-2060 (C.D. Cal. December 17, 2015)).

## CONCLUSION

Because the validity of the portions of the July 2015 Order that are at the core of this matter are squarely before the D.C. Circuit, this action should be stayed pending a decision in the pending appeal. Kohl's respectfully requests that the Court grant the instant motion.

Dated: November 14, 2016

                                        Respectfully Submitted,

                                        KELLEY DRYE & WARREN LLP

                                        By:   /s/ Lauri Mazzuchetti
                                                  Lauri Mazzuchetti, Esq. (*pro hac vice*)
                                                  LMazzuchetti@kelleydrye.com
                                                 One Jefferson Road, 2nd Floor
                                                 Parsippany, New Jersey 07054
                                                 Telephone: (973) 503-5900
                                                 Facsimile: (973) 503-5950

                                                 Craig R. Anderson, Esq.
                                                 Nevada Bar No. 6882
                                                 canderson@maclaw.com
                                                 Brianna Smith, Esq.
                                                 Nevada Bar No. 11795
                                                 bsmith@maclaw.com
                                                 MARQUIS AURBACH COFFING
                                                 10001 Park Run Drive
                                                 Las Vegas, Nevada 89145
                                                 Telephone: (702) 382-0711
                                                 Facsimile: (702) 382-5816

                                                 *Attorneys for Defendant*
                                                 *Kohl's Department Stores, Inc.*