Craig K. Perry
Nevada Bar No. 003786
CRAIG K. PERRY & ASSOCIATES
8010 W. Sahara Avenue, Suite 260
Las Vegas, Nevada 89117
Tel: (702) 228-4777
Fax: (702) 943-7520
cperry@craigperry.com

*ATTORNEYS FOR PLAINTIFF*
[Additional counsel appear on signature page]

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

KIRBY SPENCER,

                    Plaintiff,

v.

KOHL'S DEPARTMENT STORES, INC.,

                    Defendant.

Case No. 2:14-CV-01646-RFB-CWH

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STAY ACTION**

Hon. Richard F. Boulware, II

Magistrate Judge Carl W. Hoffman

       Plaintiff Kirby Spencer ("Spencer"), through his undersigned attorneys, respectfully submits this Memorandum of Law in Opposition to Defendant Kohl's Department Stores, Inc.'s Motion to Stay Action (Dkt. 71) ("Motion to Stay" or "2nd Motion to Stay").

## I.    INTRODUCTION

       Realizing that its placement of unauthorized automated calls to the cell phones of Plaintiff and the putative class members will result in almost certain liability under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), Defendant Kohl's Department Stores, Inc. ("Kohl's" or "Defendant") is now, yet again, moving to stay the case in the slim hope that the D.C. Circuit Court of Appeals will reverse well-established TCPA precedent.  Specifically, similar to Defendant's first Motion to Stay that was filed *two years ago* (Dkt. 10) ("1st Motion to Stay"), Defendant's renewed Motion to Stay focuses on

the Federal Communications Commission's ("FCC") 2015 "Omnibus" ruling[1] which, among other things, reiterated that under the TCPA the "called party" is the actual person who was "called," and not the individual whom the caller was supposedly "intending" to reach.  While Defendant's Motion to Stay suggests that the FCC's interpretation of "called party" requires a new "uniform, national interpretation," and that the D.C. Circuit may somehow change or negate the FCC's interpretation (Mot. to Stay at 11:2–15, 12:15–16), Defendant fails to note that *every* federal appellate court that has looked at the issue has already reached the *same* conclusion as the FCC did in its 2015 Ruling.  *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640, 643 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 325–27 (3d Cir. 2015).  Given that the D.C. Circuit will also be giving significant deference to the FCC's determination, there is no basis at all to conclude that the D.C. Circuit will reverse significant TCPA precedent such that this litigation should grind to a halt.  In fact, since the FCC has now actually ruled in Plaintiff's favor on the petitions that formed the basis of Defendant's first Motion to Stay, there is now even less justification to stay this action.  This is why numerous courts across the country have rejected similar efforts to stay TCPA cases based on the D.C. Circuit's consideration of the "called party" issue, and out of the nine cases cited by Defendant (Mot. to Stay at 12:16–13:13), seven of them did not grant a stay based on the D.C. Circuit's review of the "called party" issue.  (*See infra* Section IV.E.)

At the same time, the potential prejudice caused by Defendant's delay at this advanced stage of the litigation would be significant.  A stay could potentially delay this case – which was originally filed in October 7, 2014 – for up to *8 months*, until the summer of next year.[2]  And this does not even factor in any potential appeal to the Supreme Court, and a

---

[1] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling*, 30 F.C.C. Rec'd 7961 (July 10, 2015) ("2015 FCC Ruling").  Relevant portions of the 2015 FCC Ruling are attached as Exhibit A to the Declaration of Evan M. Meyers in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Stay Action ("Meyers Decl."), filed contemporaneously herewith.

[2] *See* Exhibit B to the Declaration of Evan Meyers.  Exhibit B contains an analysis of 54 cases that the D.C. Circuit decided between July 7, 2015 through August 7, 2015, and the

subsequent motion to stay pending certiorari and beyond—an almost certain likelihood given Defendant's penchant for delaying prosecution of this case at every opportunity.  Given that Plaintiff has complied with all of Defendant's discovery requests and even produced Plaintiff for a deposition almost *one year ago* (Dkt. 70 at 3), while Defendant has only stalled Plaintiff's discovery efforts and failed to produce long-outstanding discovery, and Plaintiff has only been able to depose Defendant's third-party calling vendor, it would be prejudicial and patently unfair to allow Defendant to have yet another opportunity to avoid complying with its discovery obligations and deny Plaintiff the ability to prosecute this action.

Plaintiff is currently in a position to complete the class discovery needed to go forward with his motion for class certification, and to take Defendant's long-delayed 30(b)(6) deposition, in a short period of time so that this case can proceed to class certification and subsequent dispositive motion briefing.  Given the effectively indefinite nature of the stay sought by Defendant, the most prudent and efficient course would be to allow this litigation to proceed so that Plaintiff may expeditiously wrap up discovery and the Parties can proceed with briefing class certification and dispositive motions.

## II.   BACKGROUND

### A.   Procedural History.

In recounting the procedural history of this litigation, Defendant leaves out entirely any mention of its previous failed effort to stay this litigation on the exact same grounds that are being raised here.  Specifically, this action was originally filed as an individual action on October 7, 2014.  (Dkt. 1.)  Shortly after the filing of the complaint, Defendant moved to stay the case pending the resolution of various petitions before the FCC that were ultimately resolved in Plaintiff's favor by the 2015 FCC Ruling.  (1st Mot. to Stay, Dkt. 10, at 4:9–5:14.)  Defendant's first Motion to Stay was based on the same exact arguments then before the FCC – regarding the definition of the term "called party" and creating a "safe harbor" exception for unauthorized calls made to wrong numbers – as those that are currently before

time which elapsed from oral argument to decision.  The time between oral argument and decision ranged from 64 to 308 days, with an average of 165 days.

the D.C. Circuit.  (1st Mot. to Stay at 4:9–5:14; 2nd Mot. to Stay, Dkt. 71, at 9:7–10.)  The Court, however, denied Defendant's first motion to stay, and the Parties were allowed to proceed with discovery.  (Dkt. 18.)

Shortly thereafter, on February 5, 2016, Plaintiff moved to bring this action on behalf of a putative class of individuals who similarly received the unauthorized calls at issue.  (Dkt. 20.)  Plaintiff's motion was granted (Dkt. 49), and on October 13, 2015 Plaintiff filed his First Amended Class Action Complaint.  (Dkt. 50.)  Following the filing of Defendant's Answer to Plaintiff's Amended Complaint (Dkt. 53), on November 25, 2015 the Court entered a revised scheduling order setting a discovery deadline of May 3, 2016.  (Dkt. 55.) Defendant correctly notes that thereafter on March 2, 2016 the Court entered an Order extending the discovery deadline to July 8, 2016.  (Dkt. 59.)  However, Defendant entirely fails to mention why the discovery deadline had to be extended, and generally excludes altogether the status of discovery up to this point.  This is not surprising given Defendant's practice of stalling on answering discovery and producing deficient discovery responses.

While Plaintiff issued his first set of document requests on April 27, 2015, Plaintiff did not actually receive any responsive documents until December 23, 2015—five months after Plaintiff sent a deficiency letter in July, 2015 and only after granting Defendant multiple extensions of time.  In response to Plaintiff's second set of document requests, Kohl's objected to every single Request and stated that it would not produce any responsive documents whatsoever, offering instead merely to meet-and-confer regarding the scope of the document requests.  However, after numerous attempts to meet-and-confer, Defendant did not produce any additional documents until months later, on March 25, 2016.  Importantly, neither of Defendant's two document productions were complete, and important discovery remains outstanding, including basic documents such as Kohl's contracts with any third-parties that provided calling services and that might be in possession of relevant information. This is the case even though the Parties had previously reached an agreement that Plaintiff would allow himself to be deposed first and Kohl's would provide the outstanding discovery so that Plaintiff could thereafter depose Kohl's 30(b)(6) witness and subsequently provide his

expert disclosures.  However, while Plaintiff was deposed on February 25, 2016, Defendant never subsequently provided the promised outstanding discovery.  As a result, while Plaintiff was able to proceed in May 2016 with the third-party deposition of Interactive Intelligence, Inc., a provider of calling equipment and services for Defendant, Plaintiff has not yet had the opportunity to take Defendant's deposition.

On June 28, 2016, shortly after the Interactive Intelligence deposition, a Motion to Transfer was filed with the JPML by an unrelated plaintiff, seeking to consolidate 28 cases alleging similar violations of the TCPA against Kohl's.  (Dkt. 62 at 1:23–2:2.)  In light of the possibility that this case could be consolidated and transferred to another court altogether, the Parties filed a joint petition to stay the case pending a decision by the JPML (Dkt. 62 at 3:13– 5:2), which this Court granted on July 13, 2016.  (Dkt. 63.)  The JPML issued its order denying consolidation and transfer on October 4, 2016 (Dkt. 64), and on November 1, 2016 the Court adopted the Parties' proposed revised discovery schedule that allowed Plaintiff a brief period of time to obtain the outstanding discovery and take a deposition of Defendant's 30(b)(6) witness before Plaintiff's February 24, 2017 expert disclosure deadline.  (Dkt. 70.)  However, just two weeks later, Defendant filed this Motion to Stay.

In sum, Defendant has consistently failed to uphold its obligations in providing Plaintiff discovery—even admitting as much in the Parties' joint March 1, 2016 petition to extend discovery deadlines.  (Dkt. 58 at 2:16–20) ("Plaintiff has not yet received documents in response to the Document Requests he propounded on *December 4, 2015*") (emphasis added).  In fact, to this day, despite numerous meet-and-confers and threats to move to compel, Defendant has still not provided *any* response to Plaintiff's second set of interrogatories, which were issued over *one year ago* on December 4, 2015.

B.    The TCPA and the 2015 FCC Ruling.

Plaintiff brought this suit under Section 227(b)(1)(A)(iii) of the TCPA, which prohibits any entity from making a call to a cellular telephone using an Automatic Telephone Dialing System ("ATDS").  47 U.S.C. § 227(b)(1)(A)(iii).  The language at issue in both the

2015 FCC Ruling and the ACA TCPA Appeal[3] before the D.C. Circuit upon which Defendant's Motion to Stay is based, relates to the potential affirmative defense that the calls were placed with the "prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A); Mot. to Stay at 4:12–17; *Charkchyan v. EZ Capital, Inc.*, No. 14-cv-03564, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015) ("'[p]rior express consent of the called party' is an affirmative defense"); *Heinrichs v. Wells Fargo Bank, N.A.*, No. 13-cv-05434, 2014 WL 985558, at *3 (N.D. Cal. Mar. 7, 2014); *Grant v. Capital Mgmt. Servs., L.P.*, 449 F. App'x 598, 600 n.1 (9th Cir. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facia case, but rather is an affirmative defense for which the defendant bears the burden of proof").  The TCPA, however, does not define the term "called party."  2015 FCC Ruling at 7999–80:¶72.

This suit, like many of those that were the subject of petitions filed before the FCC and the ACA TCPA Appeal, involves unauthorized phone calls placed using an ATDS to an individual whose cell phone was given a "reassigned number"—that is, a phone number which was previously assigned to a different cell phone and account user.  (Amend. Compl., Dkt. 50, at ¶¶ 13, 15; Mot. to Stay at 3:6–8, 18–21 (noting that Plaintiff's phone number was provided to Defendant "by one of its customers—not Plaintiff" and that Defendant called Plaintiff's phone number "to inform its customer of [an] overdue balance"); 2015 FCC Ruling at 7999:¶71.)  Like the petitioners in the ACA TCPA Appeal, Defendant argues that "called party" should be defined to encompass the "intended recipient" of the phone call, so that any consent obtained by the caller is attached to the phone number itself rather than the individual who provided the consent.  (Mot. to Stay at 5:8–15, 9:8–9, 11:13–15.)  Under this expanded definition, a caller will have consent to keep placing calls to a phone number regardless of whether, or how many times, the phone number is later reassigned to an entirely different and unrelated person.  2015 FCC Ruling at 7999:¶71, 8002:¶¶78–79.

In its 2015 Ruling, the FCC addressed these arguments and *rejected* a definition of

---

[3] *ACA International v. Federal Communications Commission*, No. 15-1211 (D.C. Cir. 2015) ("ACA TCPA Appeal").

"called party" that would encompass the "intended recipient."  2015 FCC Ruling at 7999–8003:¶¶ 72, 75, 78, 80.  While Defendant quotes extensively from the dissent in the 2015 FCC Ruling that the decision will "chil[] desired communications" and "anger[] consumers" (Mot. to Stay at 5:21–22, 6:5), Defendant ignores the well thought-out reasoning of the majority ruling which actually became binding law.  The FCC first explained that, under the plain language of the TCPA, the "called party" is the individual who is actually assigned the phone number at the time the call is received because they are the ones who are "charged for the call" and whose "privacy is interrupted by unwanted calls."  2015 FCC Ruling at 8001:¶74.  Furthermore, the FCC pointed out that nowhere in the language of the TCPA is the "intent" of the caller at all mentioned in relation to determining who is the "called party" and whether a caller has consent to place the calls.  *Id.* at 8002–03:¶78.  Most importantly, the FCC explained that defining "called party" based on the "intent" of the caller would make the TCPA nearly unenforceable as "evidence of intent may not be objective or available . . . and lies within the exclusive control of the caller."  *Id.*

However, the FCC did in fact also recognize that callers may inadvertently dial reassigned numbers.  Specifically addressing this problem, the FCC created a safe-harbor exception that allows callers to "avoid liability for the first call to a wireless number following reassignment[.]"  *Id.* at 8009:¶88.  It is this safe-harbor exception – which the FCC was by no means under any obligation to enact – that Defendant also takes issue with.  (Mot. to Stay at 5:24–6:9, 9:9–10.)  Defendant seems to suggest that the D.C. Circuit will take upon itself the very responsibility that Congress specifically delegated to the FCC (*see* 47 U.S.C. § 227(b)(2)) and essentially prescribe new regulations that expand the FCC's safe harbor exception.  (Mot. to Stay at 9:9–10, 11:12–15.)

It is also worth noting that, while Defendant argues that it faces "extraordinary liability" for placing the unauthorized calls at issue, as the FCC noted in its 2015 Ruling, the "TCPA does not prohibit calls to reassigned wireless numbers, or any wrong number call for that matter.  Rather, it prescribes the method by which callers must protect consumers *if they choose* to make calls using an autodialer[.]"  2015 FCC Ruling at 8006:¶84 (emphasis in

1  original).  Thus, it is only when callers such as Defendant choose to dial numbers using an

2  autodialer without first confirming whether they are dialing the correct number, that "they

3  risk TCPA liability."  2015 FCC Ruling at 8006:¶84.

4  **III.    LEGAL STANDARD**

5         Federal courts have the power to stay proceedings "incidental to the power inherent in

6  every court to control the disposition of the causes on its docket with economy of time and

7  effort for itself, for counsel, and for litigants."  *KBW Associates, Inc. v. Jaynes Corp.*, No.

8  13-cv-01771, 2015 WL 631287, at *3 (D. Nev. Feb. 13, 2015) (citing *Landis v. N. Am.

9  Co.,* 299 U.S. 248, 254 (1936)).  Whether it would be appropriate to stay a case is usually

10 determined by evaluating three factors: (1) whether a stay will simplify the issues before the

11 Court, (2) the possible damage which may result from a stay, and (3) the hardship or inequity

12 that a party may suffer by having to go forward with the litigation.  *Id.* (citing *Lockyer v.

13 Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).  However, "[g]enerally, such motions

14 [to stay discovery] are disfavored because discovery stays may interfere with judicial

15 efficiency and cause unnecessary litigation in the future."  *White v. E-Loan, Inc.*, No. 05-cv-

16 02080, 2006 WL 2850041, at *2 (N.D. Cal. Oct. 5, 2006).  Thus, the movant bears the

17 burden of demonstrating that a stay is warranted.  *KBW Associates, Inc.*, 2015 WL 631287, at

18 *3 (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).  In circumstance where "there is even

19 a fair possibility that the stay . . . will work damage to someone else" the movant must make

20 "out a clear case of hardship or inequity in being required to go forward."  *Id.* at *6 (citing

21 *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); *see also Meyer v. Bebe Stores, Inc.*,

22 No. 14-cv-00267, 2015 WL 1223658, at *3 (N.D. Cal. Mar. 17, 2015).  However, "being

23 required to defend a suit . . . does not constitute a 'clear case of hardship or inequity' within

24 the meaning of *Landis*."  *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d

25 1059, 1066 (9th Cir. 2007) (citing *Lockyer*, 398 F.3d at 1112).

26        The length of a stay must also be proportionate to "the strength of the justification

27 given for it," *Meyer*, 2015 WL 1223658, at *3, and courts should not grant stays that are

28 "indefinite in nature." *Dependable Highway Exp., Inc.*, 498 F.3d at 1067.  Most importantly,

"[o]nly in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."   *Green Tree Servicing, LLC v. Collegium Fund LLC*, No. 15-cv-0700, 2016 WL 5429652, at *5 (D. Nev. Sept. 27, 2016) (citing *Landis*, 299 U.S. at 255).

**IV.   ARGUMENT**

> A.   <u>Staying this case will not result in any judicial efficiency because there is only a remote, speculative chance that the D.C. Circuit will overturn the 2015 FCC Ruling regarding the definition of Called Party or expand the safe harbor exception</u>.

Defendant is pinning its hopes of avoiding almost certain liability in this case on the D.C. Circuit making drastic changes to the FCC's interpretation of the TCPA.  That hope, however, is divorced from reality, as it is highly unlikely that the D.C. Circuit will upend years of well-established TCPA precedent.  Defendant's central argument in favor of staying this case is that the D.C. Circuit may overturn the 2015 FCC Ruling and find that "'called party' means the intended recipient" or that "the safe harbor provision extends beyond the first call." (Mot. to Stay at 11:13–14.)  It would be undeniably inefficient to stay this case if there is little to no possibility that the D.C. Circuit would overturn the 2015 FCC Ruling on either of these two issues.  This is why Defendant struggles mightily to make it seem as if the FCC was "sharply divided on these issues" (*Id.* at 5:8) and cites almost exclusively to the *dissent* in the 2015 FCC Ruling.  (*Id.* at 5:8–6:9.)  In so doing, Defendant wants this Court to ignore the reality that the FCC's 2015 Ruling regarding the definition of "called party" is supported by numerous court decisions across the country, including every federal appellate court that has looked at the issue, and the possibility that it will be overturned is at best remote and speculative—a conclusion that also bears itself out in the oral arguments that took place before the D.C. Circuit.  Nor is there any reasonable basis to believe that the D.C. Circuit will go so far as to take on administrative rulemaking responsibilities and expand the safe-harbor exception in any manner that could have an impact on this case—especially given the fact that not even the petitioners before the D.C. Circuit sought such relief.

1.     *There is no reasonable likelihood that the D.C. Circuit will reverse the FCC's definition of "called party."*

Contrary to being the "sharply divided" issue that Defendant presents it as, the FCC's ruling regarding the definition of called party is unanimously supported by every federal appellate court that has looked at the issue, and as shown through the oral argument excerpts cited below, the D.C. Circuit itself.

The seminal case supporting the FCC's determination that the "called party" is not the "intended recipient" is *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012).  In *Soppet*, the fact pattern was identical to the one before the Court here, involving individuals who were given reassigned numbers by their cell phone carriers and subsequently began to receive numerous unauthorized automated phone calls attempting to collect on the debt of the prior assigned owners of the phone numbers.  *Soppet*, 679 F.3d at 638–39; Amend. Compl. at ¶¶ 11–12, 15–16.  Raising the same argument as Defendant and the petitioners before the D.C. Circuit, the defendant in *Soppet* argued that it could not be held liable for the calls because "the Customers' consents to be called at the two Cell Numbers remained in force after the numbers' reassignments to [the plaintiffs]."  678 F.3d at 639.  The Seventh Circuit flatly rejected this logic, finding that the use of the term "called party" elsewhere in the statutory language of the TCPA related solely to the "current subscriber" of the phone number.  *Id.* at 639 (noting in part that "only the current subscriber pays" to receive the calls, not the intended recipient).  The Seventh Circuit's reasoning on this point was identical to that of the FCC.  2015 FCC Ruling at 8001:¶74.  The court went on to explain that it is simply illogical to equate the "called party" with the "intended recipient":

> [T]he "called party" is the Cell Number's current subscriber, not the person Debt Collector wants to reach.  Suppose Smith, trying to reach Jones, dials the number with a typo and reaches Perkins, who says "you have the wrong number."  No colloquial user of English would call Jones rather than Perkins the "called party."  So too if Jones used to be the subscriber of a number later reassigned to Perkins, and Smith's contacts file is out of date.
>
> Consider another analogy.  Borrower agrees with Bank, as a condition of a loan, that Bank can enter Borrower's garage and repossess his car if he does not keep current on payments.  After signing this contract, Borrower sells his house, moves, does not tell

Bank his new address, and defaults on the loan.  Can Bank now enter the garage of the house where Borrower used to live and seize the car the repo men find there?  Surely not. . . . Bank has permission to enter the garage where Borrower keeps his car at the time of entry; Bank does not have consent to enter the garage of the new owner of Borrower's old house.  Similarly, Customer could consent expressly to receive calls at his *current* Cell Number, even if that number changes, but simply providing Creditor with a number . . . does not authorize perpetual calls to that number after it has been reassigned to someone else.

*Soppet*, 679 F.3d at 641.

Following *Soppet*, the Eleventh Circuit in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014), and the Third Circuit in *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316 (3d. Cir. 2015), have similarly found that "the term 'called party' refers to 'the person subscribing to the called number at the time the call is made,' rather than the intended recipient of the call."  *Leyse*, 804 F.3d at 325 n.13 (citing *Soppet*, 679 F.3d at 643; *Osorio*, 746 F.3d at 1251–52).  In fact, the *Leyse* decision was issued after the 2015 FCC Ruling was released and the Third Circuit specifically acknowledged the FCC's definition of "'called party' as the 'subscriber' or 'customary user' of the phone number[.]"  804 F.3d at 327 n.15 (citing 2015 FCC Ruling at 8000–02:¶¶ 73, 75–76).

Thus, Defendant's suggestion that there is need for "a uniform, national interpretation" of the meaning of "called party" does not actually reflect the current state of the law.  (Mot. to Stay at 12:8–9, 15–16.)  Defendant fails to cite to any cases where a court has adopted a definition of "called party" that conflicts with the 2015 FCC Ruling.  In fact, other courts looking at the issue have found that there is no split among the courts and that "the issue is not nearly as contested as [the defendant] portrays it . . . [T]he Court is not aware of any decision that has found 'called party' to mean 'meant-to-have-called party.'"  *King v. Time Warner Cable*, No. 14-cv-2018, 2015 WL 4103689, at *3 (S.D.N.Y. July 7, 2015).  Indeed, other district courts outside of the Third, Seventh, and Eleventh Circuits, including courts within the Ninth Circuit, have also rejected arguments for defining "called party" as the "intended recipient."  *See, e.g.*, *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1227 (S.D. Cal. 2014); *Lee v. Loandepot.com, LLC*, No. 14-cv-01084, 2016 WL 4382786, at *5 (D. Kan. Aug. 17, 2016); *Paradise v. Commonwealth Fin. Sys., Inc.*, No. 13-

cv-00001, 2014 WL 4717966, at *3 (M.D. Pa. Sept. 22, 2014) ("The 'intended recipient,' in this case the Defendant's debtor, is not the 'called party,' . . . consequently the prior consent defense appears unavailing for the Defendant.").

The possibility that the D.C. Circuit will suddenly reject these prior rulings – including the decisions by the Third, Seventh, and Eleventh Circuits, and including decisions reached long before the 2015 FCC Ruling was even released – as well as the FCC's own analysis of the statute over which it was granted regulatory authority, is purely speculative, at best. This is especially the case given that the D.C. Circuit is required to give deference to the FCC's interpretation of the TCPA on this issue. *See Bush-Quayle '92 Primary Comm., Inc. v. Fed. Election Comm'n*, 104 F.3d 448, 452 (D.C. Cir. 1997) ("courts accord deference to an agency's interpretation of a statute it administers. Where the statutory language is ambiguous, the agency's interpretation is adopted so long as it is reasonable") (citing *Chevron v. U.S.A. Inc. v. NRDC*, 467 U.S. 837, 844, 845 (1984)); *Sliwa v. Bright House Networks, LLC*, No. 16-cv-235, 2016 WL 3901378, at *3 (M.D. Fla. July 19, 2016) (denying a motion to stay pending the ACA TCPA Appeal on the called party issue and finding that given the "highly deferential" standard to be applied by the D.C. Circuit, "it is more likely than not that the D.C. Circuit will uphold the [2015 FCC Ruling]").

The D.C. Circuit's deference to the FCC on this issue was made particularly apparent at the oral arguments on the ACA TCPA Appeal. While Defendant cites to the transcript of the oral arguments before the D.C. Circuit regarding the safe harbor issue (Mot to Stay at 7:15–8:6; Dkt. 73-6), absent in Defendant's Motion to Stay is any mention of the discussion regarding whether the FCC's definition of "called party" was erroneous. In fact, in response to the petitioners' attempts to argue that "called party has to be read to mean the party who provided consent" (D.C. Cir. Trans., Ex. C, at 43:20–44:1),[4] Judge Edwards twice noted that the "principal fight here is on the safe harbor [exception] is too short" (*id.* at 43:20–22, 45:12–15), and specifically stated that the FCC's "reading of the statute is certainly not

---

[4] Relevant excerpts of the transcript of the oral arguments that took place before the D.C. Circuit on October 19, 2016 are attached as <u>Exhibit C</u> to the Declaration of Evan Meyers.

untenable" and instructed petitioners' counsel to move on to discussing the safe harbor issue. (Ex. C at 45:15–22.)

In sum, there is almost no likelihood that a decision by the D.C. Circuit will overturn the FCC's 2015 Ruling regarding the definition of "called party" such that a stay can achieve any "judicial efficiency."  Mot. to Stay at 12:4–5; *Makaeff v. Trump Univ., LLC*, No. 10-cv-940, 2011 WL 613571, at *4 (S.D. Cal. Feb. 11, 2011) (denying motion to stay where the defendant "failed to show sufficient likelihood of success on the merits [of the underlying appeal]").

> 2. *Any ruling by the D.C. Circuit on the issue of the safe harbor exception will not have an impact on this case.*

It is similarly unlikely that any ruling from the D.C. Circuit regarding the safe harbor exception would have any impact on this litigation.  As previously stated, the meaning of called party, as defined by the FCC and numerous federal appellate courts, provides for liability when unauthorized automated calls are placed to reassigned numbers.  Accordingly, the fact that the FCC provided *any* safe harbor at all, was done so purely for the benefit of entities such as Defendant that seek to reduce costs of operating their businesses by placing thousands of calls using automated dialing systems without proper safeguards to prevent calls to wrong numbers.  In short, the FCC provided a significant concession to such entities that goes far beyond any exception under the statutory language of the TCPA.  *See Sliwa*, 2016 WL 3901378, at *2 n.4 (noting that "[c]ontrary to [defendant's] claim that the FCC's one-call constructive knowledge standard is 'rather extreme,' it is ostensibly *more* favorable to callers than the rule previously followed . . . which was that *any* call to someone who had not consented violated the TCPA") (emphasis in original) (citing *Osorio*, 746 F.3d 1251–52).

Defendant now suggests that the D.C. Circuit may somehow rule in a manner that expands the "safe harbor" "beyond the first call[.]"  (Mot. to Stay at 11:13–14.)  However, not even the *petitioners* before the D.C. Circuit argued for the D.C. Circuit to expand the safe harbor exception.  In fact, petitioners twice stated that the "remedy" they were seeking is "to strike down the [FCC's] entire treatment of reassigned numbers and send the whole thing

back for the [FCC] on the basis of a record . . . to determine what measures will provide the reasonable opportunity to learn of reassignment."  (Ex. C at 48:2–9, 51:3–12 ("[t]he solution to this problem is to interpret called party to mean expected recipient, but at a minimum *what this Court ought to do is to vacate the entire treatment of reassigned numbers because the one call rule is plainly inadequate*") (emphasis added)).  Thus, any stay pending a decision on the extent of the safe harbor exception would be effectively indefinite, because it would require staying the case not just until the D.C. Circuit issues its ruling, but until such time in the future that the FCC assembles a proper "record" and issues a subsequent ruling.  Indeed, Defendant fails to acknowledge this when it wrongly suggests that the D.C. Circuit *itself* would somehow take on the administrative rulemaking powers of the FCC and *sua sponte* implement an expanded safe harbor provision.  Not even the petitioners before the D.C. Circuit attempted to go that far.

Finally, it is worth noting that, given the number of calls received by Plaintiff and the extended time period within which those calls were received, it is unlikely that any theoretical expanded safe harbor exception would extend to *all* of the calls at issue such that "Kohl's will have a complete defense to Plaintiff's claims."  (Mot. to Stay at 11:14.)  Entirely missing from Defendant's brief is any mention of the fact that it placed over 100 unauthorized calls to Plaintiff's cellular telephone over the span of nearly two months. (Amend. Compl., Exhibit 1, Dkt. 50, at 8–10.)  It is beyond speculation to suggest that the FCC will expand the existing "safe harbor" to such an extent that Defendant will be shielded from all liability despite such conduct.

B.     A stay of this case would be nearly indefinite and prejudicial to Plaintiff.

Not only is it highly unlikely that a stay will actually resolve any issues in this case, but the stay sought by Defendant would be extremely lengthy, if not effectively indefinite, such that Plaintiff would be severely prejudiced.  To begin with, the D.C. Circuit will likely not issue a ruling until April of next year—not any earlier than the discovery closure date in this case.  (*See, supra,* p.3, n.2 (noting that the average time between when the D.C. Circuit hears an oral argument and issues a written ruling is approximately 5.5 months); Scheduling

Order, Dkt. 70, at 3.)  In fact, based on the D.C. Circuit's current track record for issuing decisions, it may take even longer to rule on the ACA TCPA Appeal—perhaps up to 10 months.  (*See* Ex. B, showing that the appeal in *Grimes v. Dist. of Columbia* was decided 308 days after oral argument).  This is an especially likely possibility here given that the "called party" issue is just one of *eight* other separate legal issues that will be ruled on in the ACA TCPA Appeal.  *See* Brief for Respondents, *ACA Int'l et al. v. FCC*, No. 15-1211, Doc. # 1594039, at iv–v (D.C. Cir. Jan. 15, 2016).[5]

      Furthermore, it is unlikely that even after the ACA TCPA Appeal is decided that this litigation will be able to proceed, as any ruling by the D.C. Circuit will likely be appealed to the Supreme Court.  And given Defendant's track record of filing motions to stay and delaying this litigation, it is highly likely that Defendant will seek to further extend the stay pending any application to grant certiorari.  Of course, if the Supreme Court grants any such application, Defendant will surely move for a further stay on that basis as well.  *See Yong v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000) (noting that staying the case pending an appeal to the Ninth Circuit would be "indefinite" because "if the Supreme Court should grant certiorari to review [the Ninth Circuit's decision], the stay could remain in effect for a lengthy period of time, perhaps for years").  In short, the stay sought by Defendant is at best extremely lengthy, and at worst effectively indefinite, with the potential to stay this case for years.  *See Perron v. Hewlett-Packard Co.*, No. 10-cv-00695, 2011 WL 1344221, at *2 (N.D. Cal. Apr. 8, 2011) (denying motion to stay pending an appeal to the Ninth Circuit and noting that "the Ninth Circuit has acknowledged that a stay pending appeal is of dubious character and may result in indefinite delay.  Accordingly, district courts frequently deny requests for a stay pending appeal of a separate, but related, action") (citing *ASUSTek Computer Inc. v. Ricoh Co., Ltd.*, No. 07-cv-01942, 2007 WL 4190689, at *3 (N.D. Cal. Nov. 21, 2017) (denying motion to stay pending appeal to the Federal Circuit and noting that even a three-month stay would be "prejudicial" to the non-movant)).

---

[5] Relevant excerpts of the FCC's response brief in the ACA TCPA Appeal are attached as <u>Exhibit D</u> to the Declaration of Evan Meyers.

Such an indefinite stay will cause delay and will prejudice Plaintiff's ability to prosecute the case. *See O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-cv-01821, 2016 WL 815357, at *5 (N.D. Cal. Mar. 2, 2016) (finding in a case involving TCPA claims that "the possible damage and prejudice to Plaintiff that may result from staying the case pending the resolution of the FCC appeals is significant"); *Molnar v. NCO Fin. Sys., Inc.*, No. 13-cv-00131, 2015 WL 1906346, at *4 (S.D. Cal. April 20, 2015) ("an open-ended stay will likely cause delay and prejudice to Plaintiffs' case"); *Elikman v. Sirius XM Radio, Inc.*, 15-cv-2093, Dkt. 37, at 3 (N.D. Ill. Dec. 21, 2015) (denying the defendant's motion to stay pending the ACA TCPA Appeal and finding that "[s]taying the case pending the D.C. Circuit's review would . . . subject [the plaintiff] to the inequity of indefinite delay").[6]  Such prejudice is particularly acute here, where Plaintiff has already proceeded with significant discovery and the case is fairly advanced.  In fact, Plaintiff has already been deposed and has responded to Defendant's discovery requests based on an agreement between the Parties that Defendant would answer outstanding discovery and thereafter produce its 30(b)(6) witness.  However, while Defendant took advantage of the opportunity to take Plaintiff's deposition, Defendant has repeatedly refused to fulfill its obligations and now seeks to prevent Plaintiff from moving forward with discovery altogether—clearly prejudicing Plaintiff.

With the depositions of Plaintiff and Defendant's calling vendor already completed, Plaintiff would only need limited additional discovery from Defendant that has been outstanding for a significant amount of time before he can proceed with a 30(b)(6) deposition and prepare to file his motion for class certification.  This Court previously denied Defendant's first Motion to Stay back when the case was in its infancy, and the argument for denying Defendant's renewed Motion to Stay given the status of the litigation and the potential prejudice to Plaintiff is even stronger now.

---

[6] The decision denying the defendant's motion to stay the case in *Elikman* is attached as <u>Exhibit E</u> to the Declaration of Evan Meyers.

C.    Defendant fails to make out a clear case of hardship or inequity in being required to move forward.

While Defendant appears to try to put the burden on Plaintiff of proving why a stay should *not* be granted, Defendant's brief entirely fails to mention that it is actually Defendant's burden to prove why a stay *should* be granted. *KBW Associates, Inc.*, 2015 WL 631287, at *3 (citing *Clinton*, 520 U.S. at 708). This is especially the case where a defendant, such as here, seeks a stay that "will work damage to someone else[,]" in which case it must make "out a clear case of hardship or inequity in being required to go forward." *Id.* at *6 (citing *CMAX, Inc.*, 300 F.2d at 268 (9th Cir. 1962)); *see also Meyer*, 2015 WL 1223658, at *3.

Given the nearly indefinite nature of the stay sought by Defendant – which, as discussed above, is likely to be 4–8 months at the very least – and the prejudice to Plaintiff that will result, Defendant does not even attempt to make out an argument as to why it will face hardship in having to move forward with the litigation. Instead, Defendant broadly claims that a stay would "clarify and simplify the issues to be litigated" and "promote judicial efficiency." (Mot. to Stay at 11:22–23, 12:4–5.) To the extent Defendant mentions that waiting for the D.C. Circuit to rule may "constrain . . . the size and scope of the discovery" (Mot. to Stay at 11:24–26), this alone is insufficient to warrant a stay, as "being required to defend a suit . . . does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Dependable Highway Exp., Inc.*, 498 F.3d at 1066. Nor is there significant discovery remaining, as Plaintiff has already taken the deposition of Defendant's third-party calling vendor regarding whether the calls at issue were placed using an Automatic Telephone Dialing System. Thus, Plaintiff has already received almost all of the discovery necessary regarding one of the key elements of Plaintiff's claim. Nor is Defendant arguing that Plaintiff was actually the intended recipient of the calls in question. (Mot. to Stay at 3:6–8.) Accordingly, the amount of discovery and other further efforts that the Parties will have to undertake to proceed with class certification and ultimately any dispositive motions are limited and can be easily managed with the guidance of the Court. *Konopca v. Comcast Corp.*, No. 15-cv-6044, 2016 WL 1645157, at *4 (D.N.J. Apr. 26,

2016) (denying motion to stay pending the ACA TCPA Appeal and noting that "[h]ere, the only purported 'hardship' identified by Defendant is the possibility that the parties may engage to some extent in unnecessary discovery and/or motion practice.  The Court does not find this sufficient to constitute the requisite hardship or inequity and, therefore, finds that this second factor weighs against staying this case.")

     D.    <u>The Parties are in the midst of discovery such that any stay would have a significant impact on the proceedings going forward</u>.

Given the advanced procedural posture of this case, staying the case at this point would be more inefficient than allowing it to proceed, as (despite being sidetracked by this Motion to Stay) the Parties are on schedule to conclude all discovery before the D.C. Circuit would likely even issue a ruling on the ACA TCPA Appeal.  (Dkt. 70, at 3) (setting April 28, 2017 as the discovery closure date).  As stated above, there is little discovery that remains to be completed by the Parties.  Primarily, Plaintiff intends to simply seek Defendant's responses to already issued discovery requests that will be mainly limited to contracts with any other third-parties related to the debt collection calls placed by Defendant, call logs for calls placed to other putative class members, and any internal communications and policies and procedures relating to verifying whether a called number has been reassigned.  Upon production of such documents Plaintiff will be in a position to proceed with a deposition of Defendant's 30(b)(6) witness, and to then disclose his expert report and complete discovery.

On the other hand, if discovery is stayed as Defendant suggests, discovery would likely not proceed again until sometime in late summer/early fall of 2017, and will not conclude until almost one year from now in late 2017/early 2018.  If the current schedule is maintained this case will likely be concluded by then, with class certification and dispositive motions already filed.  (Dkt. 70 at 3) (setting May 26, 2017 as the deadline for Plaintiff's motion for class certification, with dispositive motions due 60 days after the court's ruling.)

     E.    <u>Numerous courts across the country have denied identical motions to stay</u>.

Defendant tries to garner support for its Motion by citing to "numerous courts around the country [that] have granted similar motions to stay in TCPA cases."  (Mot. to Stay at

12:16–18.)   However, Defendant fails to point out that out of the 9 cases it cites, 4 were stayed based on completely *unrelated* issues of the FCC's interpretation of the term Automatic Telephone Dialing System,[7] as well as newly enacted requirements regarding obtaining prior express written consent to make automated solicitation calls.[8]  In fact, in the *Gensel* case, while the court stayed the matter based on the unrelated "capacity issue" regarding the definition of an ATDS, 2015 WL 6158072, at *2, the court rejected the argument made by Defendant here, specifically noting that "[defendant] pins its hopes on the expectation that the appellate courts . . . will overrule the FCC.  *This seems unlikely on the number reassignment/safe harbor issue.*"  *Id.* (emphasis added).  And with respect to the five cases where the court did rule on the called party issue, three of them were actually decided based on the initial appeal to the *FCC* under the primary jurisdiction doctrine—not pending the appeal to the D.C. Circuit.[9]  Indeed, the *Miller v. DirecTV, LLC* case relied on by Defendant presents an excellent example of exactly why the stay sought by Defendant is indefinite in nature.  In *Miller*, the stay was originally sought based on primary jurisdiction grounds pending the FCC's 2015 Ruling.  *Miller v. DirecTV, LLC*, No. 14-cv-07579, Dkt. 35-1 (C.D. Cal. Nov. 14, 2014).  However, after the stay was granted (*Id.*, Dkt. 42 (minute order entered January 8, 2015)), the court thereafter entered a further stay pending the ACA TCPA Appeal that is at issue here.  *Id.*, Dkt. 45 (minute order entered August 7, 2015).  Thus, the case has in effect been stayed for close to *two years*, since January 8, 2015.

More importantly, however, with respect to similar motions to stay pending the D.C. Circuit's decision on the definition of "called party," at least 9 district courts across the country have recently denied such motions to stay.  *See Sliwa*, 2016 WL 3901378, at *3

---

[7] *Coatney v. Synchrony Bank*, No. 16-cv-389, 2016 WL 4506315, at *1 (M.D. Fla. Aug. 2, 2016); *Ricks v. Allied Interstate, LLC*, No. 16-cv-00205, 2016 WL 4505173, at *1 (M.D. Fla. July 11, 2016); *Gensel v. Performant Techs., Inc.*, No. 13-cv-1196, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015).

[8] *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 14-cv-00514, 2014 WL 4187250, at *2 (E.D. Cal. Aug. 21, 2014).

[9] *Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-cv-00201, 2014 WL 4662512, at *3 (S.D. Ala. Sept. 19, 2014); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-cv-2624, 2014 WL 1930885, at *3 (D. Kan. May 14, 2014); *Higgingbotham v. Hollins*, No. 14-cv-2087, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014).

(finding that the "indefinite length and uncertain outcome of the appeal substantially weigh against requiring Plaintiff to stand aside[]") (internal citations omitted); *Schwyhart v. AmSher Collection Servs., Inc.*, No. 15-cv-01175, 2016 WL 1620096, at *2 (N.D. Ala. Apr. 22, 2016) (denying motion to stay and noting that "before the FCC issued the FCC Order, the Eleventh Circuit had already considered and rejected the contention that 'the 'intended recipient' [of a telephone call] is the 'called party' referred to' in the TCPA") (citing *Osorio*, 746 F.3d at 1252); *Jones v. AD Astra Recovery Servs., Inc.*, No. 16-cv-1013, 2016 WL 3145072, at *6 (D. Kan. June 6, 2016) ("solely defending a suit, without setting forth additional prejudice, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*") (internal citations omitted); *O'Hanlon*, 2016 WL 815357, at *5 ("In light of the persuasive authority on this issue from other circuit courts, and because a decision from the D.C. Circuit would not be controlling in this case, Defendant would not be prejudiced if the case moves forward in spite of the FCC appeals") (citing *Leyse*, 804 F.3d at 325 n. 13; *Soppet*, 679 F.3d at 640–41; *Osorio*, 746 F.3d at 1251); *Edwards v. Oportun, Inc.*, No. 16-cv-00519, 2016 WL 4203853, at *6 (N.D. Cal. June 14, 2016) ("judicial economy is not served by granting a stay"); *Lathrop v. Uber Techs., Inc.*, No. 14-cv-05678, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ("[p]laintiffs argue persuasively that they would suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate . . . . Moreover . . . the D.C. Circuit is unlikely to be the final step in the litigation[]"); *Konopca*, 2016 WL 1645157, at *4–*5; *Rivera v. Exeter Fin. Corp.*, No. 15-cv-01057, 2016 WL 374523, at *3 (D. Colo. Feb. 1, 2016) ("weighing the factors necessary to consider whether to grant the requested stay, the Court finds that Defendant's request must be denied"); *Konopca v. Ctr. for Excellence in Higher Educ., Inc.*, No. 15-cv-5340, 2016 WL 4644461, at *3 (D.N.J. Sept. 6, 2016).  Accordingly, contrary to Defendant's arguments, the majority of the case law on this issue overwhelmingly favors rejecting efforts to indefinitely stay TCPA cases pending the numerous appeals and potential future decisions that may stem from defendants' efforts to escape liability under the 2015 FCC Ruling.

## V.   CONCLUSION

Given that the D.C. Circuit refused to even entertain any arguments challenging the FCC's definition of "called party," and that even the petitioners before the court only sought to send the safe-harbor issue back to the FCC for further determination, there is almost no possibility that staying this case would achieve anything other than delaying this litigation for a nearly indefinite period of time.  Nor has Defendant met its burden of proving a clear case of hardship or inequity if it had to proceed.  As shown above, numerous courts across the country have denied motions to stay TCPA cases based on the D.C. Circuit's analysis of the "called party" issue.  As these other courts have similarly found, a stay under these circumstances is simply not warranted and will do nothing but create judicial inefficiencies and prevent Plaintiff from prosecuting his case for an unreasonably extended period of time.  This is especially apparent here, where the case is advanced, with limited discovery remaining, and with discovery currently set to close before there will likely even be any ruling from the D.C. Circuit.  Plaintiff has responded to discovery and has sat for a deposition.  Defendant should not be entitled to stay this case so that it can continue to avoid its obligations to produce documents and sit for a deposition, and to generally prevent Plaintiff from prosecuting his claim.  For these reasons and those stated above, Defendant's Motion to Stay should be denied.[10]

Dated: December 14, 2016              Respectfully submitted,

                                      KIRBY SPENCER

                                      By: /s/ Evan M. Meyers_____

---

[10] To the extent this Court determines that a stay is warranted, Plaintiff submits that the Court should permit the Parties to complete discovery before the stay is implemented, and only stay any subsequent motion practice and trial proceedings.  *See Espejo v. Santander Consumer USA, Inc.*, No. 11-cv-8987, 2016 WL 6037625, at *6 (N.D. Ill. Oct. 14, 2016) (noting that a stay pending the ACA TCPA Appeal "could be substantial" and only deferring trial proceedings pending a ruling from the D.C. Circuit).

Craig K. Perry, Esq.
Nevada Bar No. 003786
8010 W. Sahara Avenue, Suite 260
Las Vegas, Nevada 89117
Tel: (702) 228-4777
Fax: (702) 943-7520
cperry@craigperry.com

Evan M. Meyers (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com

*Counsel for Plaintiff Kirby Spencer*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on December 14, 2016, I electronically filed the forgoing

3   *Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Stay Action* with the

4   Clerk of the Court using the CM/ECF system.  Notice of this filing is sent to all counsel of

5   record by operation of the Court's electronic filing system.  Parties may access this filing

6   through the Court's system.

7

8   Dated:  December 14, 2016                          /s/ Evan M. Meyers

9                                                     Evan M. Meyers

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28