Lauri Mazzuchetti, Esq. (*pro vac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
E-Mail: lmazzuchetti@kelleydrye.com

Abran E. Vigil
Nevada Bar No. 7548
Brianna G. Smith
Nevada Bar No. 11795
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
E-mail: vigila@ballardspahr.com
E-mail: smithbg@ballardspahr.com

*Attorneys for Defendant Kohl's Department Stores, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| KIRBY SPENCER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KOHL'S DEPARTMENT STORES, INC.,<br><br>Defendant. | CASE NO. 2:14-CV-01646-RFB-CWH<br><br>**KOHL'S DEPARTMENT STORES INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS, OR, IN THE ALTERNATIVE, FOR A STAY** |

Defendant Kohl's Department Stores, Inc. ("Defendant" or "Kohl's"), in accordance with this Court's Order to file a dispositive motion pursuant to the D.C. Circuit Court of Appeals decision in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. Mar. 16, 2018) on or before this date (ECF Nos. 84, 86), hereby moves the Court to grant judgment on the pleadings in favor of Kohl's, and issue an Order dismissing Plaintiff Kirby Spencer's ("Plaintiff") amended complaint (ECF No. 50) (the "Amended Complaint" or "Am. Compl.") in its entirety with prejudice pursuant to Fed. R. Civ. P.

12(c). Should the Court decline to dismiss the Amended Complaint, it should stay this action pending the Federal Communication Commission's ("FCC") consideration of the issues dispositive of Plaintiff's Telephone Consumer Protection Act ("TCPA") claim.

Kohl's makes and bases its motion on its Memorandum of Points and Authorities below, the pleadings and papers on file in this matter, and any oral argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The allegations underlying Plaintiff's TCPA claim are straightforward and undisputed: Kohl's, in an attempt to contact one of its customers in connection with a Kohl's charge account, inadvertently called Plaintiff because that customer's telephone number from its internal list had been reassigned to Plaintiff (the "Number"). Although Plaintiff concedes that Kohl's was attempting to contact someone else, Plaintiff never answered the phone to inform Kohl's that it was placing the calls in error. By purposely not answering the phone, Plaintiff sought to capitalize on Kohl's error and invite additional calls to increase Kohl's potential liability. Based on the FCC's prior orders and overly-expansive interpretations of the TCPA at that time, this case may have survived the pleading stage. Now that the D.C. Circuit has ruled in ACA Int'l v. FCC and vacated the FCC's prior orders and interpretations regarding reassigned numbers, as well as what device can be considered an "Automatic Telephone Dialing System" ("ATDS"), Plaintiff's claim fails as a matter of law and Kohl's is entitled to a judgment on the pleadings dismissing the case with prejudice.

Second, the D.C. Circuit's decision invalidated the FCC's expansive interpretation of the type of device that constitutes an ATDS under the TCPA— another essential element of Plaintiff's claim. With the FCC's expansive interpretation now set aside, courts are left to determine whether a device

2

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

constitutes an ATDS based on the plain language of the TCPA. Under the TCPA, a device constitutes an ATDS if it has the capacity to perform both of two enumerated functions: 1) to store or produce telephone numbers to be called, using a random or sequential number generator; and 2) to dial such numbers. Plaintiff acknowledges that Kohl's did not "generate" a "random" or "sequential" number to call him. Plaintiff has pled that Kohl's was attempting to call the Number after it was provided to Kohl's by a Kohl's customer. Accordingly, Kohl's was using a predictive dialer to place calls from a customer list. Courts interpreting the definition of an ATDS following *ACA Int'l* have noted that the plain text of the statute requires that a device have the present capacity to actually generate a random or sequential number, and that it is appropriate to dismiss claims at the pleading stage when plaintiffs do not plausibly allege such facts. Here, Plaintiff cannot allege those facts.

As set forth in further detail below, because *ACA Int'l* vacated the standards upon which Plaintiff's TCPA claim relies, the Amended Complaint should be dismissed with prejudice. Should the Court not dismiss the case, it should issue a further stay of this action pending imminent FCC action on the treatment of reassigned numbers and the definition of an ATDS. In light of *ACA Int'l*, Kohl's cannot be subjected to extraordinary class liability for otherwise lawful calls made by Kohl's to the Number that, unbeknownst to Kohl's, was reassigned to Plaintiff. Current law no longer supports such a finding.

## II. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff's Amended Complaint contains a single count asserting that Kohl's violated the TCPA by placing calls using an ATDS to his cellular telephone without his consent. (Am. Compl., ¶¶ 25-28 (citing 47 U.S.C. § 227(b)(1)(A)(iii)).)

Plaintiff concedes that every call that Kohl's placed to the Number was made in error, and that Kohl's instead intended to reach a Kohl's customer that provided the Number to Kohl's. Plaintiff alleges that "[a]s an ordinary business practice,

3

DMWEST #18009363 v1

Defendant obtains the telephone numbers of its customers," that Kohl's calls those numbers to collect on "delinquent accounts," and that "beginning in or about June 2014, in an apparent effort to collect on a debt that did not belong to Plaintiff, Defendant began calling Plaintiff's cellular telephone." (Am. Compl., ¶¶ 1, 11, 15.)

Plaintiff does not allege that Kohl's lacked prior express consent to call the customer that provided the Number, at the Number he provided. Rather, Plaintiff contends that Kohl's either received the Number in error from a customer, or that the number "became inaccurate" when it was reassigned to him. (Am. Compl., ¶ 13.) The Amended Complaint alleges that Kohl's lacked prior express consent to call *Plaintiff* (*id.*, ¶ 17), but it does not explain how Kohl's could reasonably know that it was calling Plaintiff, and not the customer that provided the Number. Indeed, as the exhibit that Plaintiff attaches to the Amended Complaint demonstrates, Plaintiff never answered any of Kohl's calls to tell a representative that it was calling the wrong number (despite conceding that Kohl's was erroneously calling Plaintiff in connection with a Kohl's customer's charge account that was not related to Plaintiff). (Am. Compl., Ex. A (noting "hang up / no voicemail" as the "Result of Call" for all 103 calls Kohl's allegedly placed to Plaintiff's cellular telephone)).

Under these facts, Plaintiff seeks to certify the following proposed class:

> All persons in the United States and its territories who received one or more unauthorized telephone calls on their cellular telephone from Defendant through an automated telephone dialing system where the called party was not the same individual who, according to Defendant's records, provided the phone number.

(Am. Compl., ¶ 18.) Like Plaintiff's individual claim, Plaintiff's class claims rely upon strict liability for every call made by Kohl's to the Number that was reassigned from a Kohl's customer to a third party.

4

DMWEST #18009363 v1

### B. ACA *Int'l* and its Effect on Plaintiff's TCPA Claim

In *ACA Int'l*, the D.C. Circuit examined various petitions challenging a 2015 Order of the FCC "in which the Commission sought to clarify various aspects of the TCPA's general bar against using automated dialing devices to make uninvited calls." *ACA Int'l*, 885 F.3d at 691. Relevant here, the D.C. Circuit considered: (1) "when a caller obtains a party's consent, does a call nonetheless violate the Act if, unbeknownst to the caller, the consenting party's wireless number has been reassigned to a different person who has not given consent?" and, (2) "which sorts of automated dialing equipment are subject to the TCPA's restrictions on unconsented calls?" *Id*. *ACA Int'l's* resolution of these issues vitiated the basis for Plaintiff's individual and class claims.

*ACA Int'l* vacated the FCC's treatment of reassigned numbers, and eliminated the strict liability standard for reassigned number calls upon which Plaintiff's claim relies. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the *prior express consent of the called party*)." 47 U.S.C. 227(b)(1)(A). The FCC's 2015 Order defined "called party" under the TCPA to mean the current subscriber for a number, rather than its intended recipient, and "allowed one—and only one—liability-free, post-reassignment call for callers who lack "knowledge of [the] reassignment." *ACA Int'l*, 885 F.3d at 694. The D.C. Circuit found that while the FCC's interpretation of "called party" may have been reasonable (but not necessarily correct), the "one-call safe harbor" was arbitrary and capricious in light of the "reasonable reliance" on prior express consent that TCPA defendants may rely upon. *ACA Int'l*, 885 F.3d at 704-09. The D.C. Circuit recognized that "millions of wireless numbers are reassigned each year," and that the Commission had observed that "even the most careful caller, after employing all reasonably available tools to learn about reassignments, 'may nevertheless not learn of reassignment before placing a call to a new subscriber.'" *Id.* at 705. The TCPA "anticipates the caller's ability to rely on prior express consent." *Id.* The Court found

5

DMWEST #18009363 v1

the FCC's one-call safe harbor was arbitrary and capricious because "the first post-reassignment call likewise might give no reason to suspect a reassignment" (e.g., if a call recipient like Plaintiff refuses to pick up the phone) and subsequent calls would be just as reasonable. *Id.* at 707. And, because eliminating the one-call safe harbor alone would leave an even more unreasonable, pure strict-liability regime for reassigned numbers in place, the D.C. Circuit found it necessary to set aside the FCC's "treatment of reassigned numbers as a whole." *Id.* at 708-09.

*ACA Int'l* also invalidated the FCC's expansive interpretation of the device that constitutes an ATDS, further undermining Plaintiff's claims. Plaintiff's TCPA claim requires the use of an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii). "[A] device constitutes an ATDS if it has the capacity to perform both of two enumerated functions: 'to store or produce telephone numbers to be called, using a random or sequential number generator"; and "to dial such numbers." *ACA Int'l*, 885 F.3d at 701. Prior to *ACA Int'l*, these narrow statutory requirements had been substantially broadened by the FCC in a series of orders dating back more than a decade. *ACA Int'l*, however, found those orders to be arbitrary and capricious and properly overturned them. *Id.* at 702-03. The D.C. Circuit found that even though the FCC's 2003, 2008 and 2015 orders concerning the definition of an ATDS distinguished between the "use of equipment to 'dial random or sequential numbers' and use of equipment to 'call[] a set list of consumers'" (for example, a list of Kohl's customers who consented to be called), it still confusingly implied that a device that could "automatically" call a set list of consumers constituted an ATDS under the TCPA, even if it did not have the ability to *generate* those numbers. *Id.*, at 700-703. Accordingly, because the FCC's ATDS guidelines in the 2003, 2008, 2012 and 2015 orders were contradictory and "unreasonable," the D.C. Circuit "set aside the Commission's treatment of those matters." *Id.* at 703.

On May 8, 2018, the D.C. Circuit issued its mandate to the FCC, returning the issues of the definition of an ATDS and the treatment of reassigned numbers under

DMWEST #18009363 v1

the TCPA to the FCC's jurisdiction.  The FCC is actively engaged in rulemaking and parties have petitioned the FCC to take action on these issues.

### III.  LEGAL ARGUMENT

Judgment on the pleadings should be granted because Plaintiff's Amended Complaint fails to state a claim without the aid of the FCC standards vacated by *ACA Int'l*.  The Amended Complaint relies upon the premise that Kohl's is liable for *every single* call to a number reassigned from one of its customers who provided prior express consent, to a third party like Plaintiff, even where Plaintiff took no steps to inform Kohl's about the reassignment and Kohl's has no reasonable means to know about the reassignment.  As *ACA Int'l* found, this pure strict-liability regime is not the law.  Plaintiff's claims also rely upon the FCC's definition of an ATDS to include devices that call numbers from a set list, *without* the present capacity to first generate those numbers.  Plaintiff admits that Kohl's did not "generate" the Number, but that Kohl's instead obtained it from one of its customers.  Thus, he cannot plausibly contend that Kohl's used an ATDS to call his number.

For these reasons, set forth in further detail below, the Court should dismiss the Amended Complaint with prejudice.  Should the Court find that dismissal is not the appropriate remedy at this time, it should stay the case pending further guidance from the FCC, because Plaintiff's claims cannot proceed in the absence of a standard, and Kohl's cannot be liable for every good-faith call to the reassigned Number following *ACA Int'l*.

#### A. Judgment on the Pleadings is Warranted Following *ACA Int'l*

##### 1.  Legal Standard

"[A] Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion.'" *Murillo v. Goad*, No. 2:16-CV-02739-RFB-CWH, 2017 WL 6378963, at *1 (D. Nev. Dec. 12, 2017) (citing *Gregg v. Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (citations omitted).  "A judgment on the pleadings is properly granted when, taking all allegations in the non-moving party's pleadings as true, the moving party is

7

entitled to judgment as a matter of law." *Wurm v. Markel Ins. Co.*, No. 3:16-CV-00244-HDM-WGC, 2017 WL 3815243, at *1 (D. Nev. Aug. 31, 2017) (*citing United States v. Teng Jiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016)). The relevant inquiry is whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court is not required "to accept as true a legal conclusion couched as a factual allegation." *Id.* (*citing Iqbal*, 556 U.S. at 678).

### 2. Judgment on the Pleadings is Warranted Because Kohl's Had Prior Express Consent to Call Plaintiff's Number and Plaintiff Cannot Rely on a Strict Liability Standard to Impose Liability

Following *ACA Int'l's* invalidation of the FCC's definition of "called party" and its arbitrary one-call safe harbor for calls to reassigned numbers, Plaintiff's Amended Complaint does not state a plausible claim for violation of the TCPA. Judgment on the pleadings should therefore be granted.

*ACA Int'l* eliminates the possibility that Kohl's is liable under the TCPA for all calls made to a reassigned number. As the D.C. Circuit and FCC have recognized, reassigned numbers present inherent difficulties under the TCPA. In many instances, callers like Kohl's have no reasonable way to know when they call a number provided by a customer that it was incorrect or reassigned to a person who did not provide prior express consent to be called. The 2015 Order recognized that reliance upon prior express consent under the TCPA "mean[s] reasonable reliance." 885 F.3d at 705, citing 30 FCC Rcd. at 8009 ¶ 90 n.312. While the D.C. Circuit agreed that the definition of a "called party" could reasonably be limited to a current subscriber, it found that definition could not stand in light of the unreasonable "one-call safe harbor." It found that the Commission failed to justify "why its safe harbor stopped at the seemingly arbitrary point of a single call or message." *Id.* at 708. The D.C. Circuit found that the "Commission's treatment of reassigned numbers as a whole" needed to be set aside to avoid the implications of a "pure, strict-liability

regime" that would result if the FCC's definition of a "called party" continued to include persons to whom cellular telephone numbers were reassigned (like Plaintiff), without some protection of the callers' ability to reasonably rely on the express consent of the prior owner of the number. *Id.* at 708-09. Thus, *ACA Int'l* explicitly rejected strict liability, and left it to the FCC to determine when (if at all) a caller should be on reasonable notice that a number has been reassigned. *Id.*[1]

Without the ability to rely upon the "pure, strict-liability regime" that *ACA Int'l* declared invalid, the Amended Complaint contains no facts to lend plausibility to the conclusion that Kohl's violated the TCPA by calling the Number in error. As set forth above, the Amended Complaint does not allege that Kohl's lacked the prior express consent necessary under the TCPA to call the Number—rather, Plaintiff contends that Kohl's liability arises from Kohl's placing calls to a Kohl's customer from whom the Number was reassigned to Plaintiff without Kohl's knowledge. (Am. Compl., ¶ 13.) Plaintiff contends that Kohl's lacked prior express consent to call *him*, even though he pleads no facts to support a plausible allegation that Kohl's knew, or had reason to know, that the Number was reassigned. (*Id.*, ¶ 17.) Indeed, even though Plaintiff concedes that Kohl's was attempting to reach one of its customers when it began calling the Number in June 2014, Plaintiff allowed Kohl's to continue calling his phone over 100 times over the course of the following year and never once picked up the phone to inform Kohl's that the Number had been reassigned. (Am. Compl. ¶¶ 15-16 and n.1.) The Amended Complaint only offers the conclusory allegation that "Defendant does not utilize any procedures necessary to confirm that the telephone numbers to which Defendant makes robocalls actually belong to the debtors." (Am. Compl., ¶ 12.) This does not suffice to "nudge[] [Plaintiff's] claims

---

[1] As set forth below, *infra* p. 13-15, the FCC is considering a reassigned numbers database that would assist callers in determining if numbers are reassigned, even in cases like Plaintiff's where the party to whom the number was reassigned does not pick up the phone.

BALLARD SPAHR LLP
1980 FESTIVAL PLAZA DRIVE, SUITE 900
LAS VEGAS, NEVADA 89135
(702) 471-7000 FAX (702) 471-7070

across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007).

Allowing the Amended Complaint to survive would serve to incentivize litigation by persons like Plaintiff who invite "wrong number" calls, never pick up the phone, and then sue good-faith callers like Kohl's after allowing potential liability to accrue for as long as they see fit. More importantly, it would directly contradict the D.C. Circuit's decision to vacate the entirety of the FCC's treatment of reassigned numbers. That decision was rendered to specifically *avoid* the application of a "pure, strict-liability regime" for reassigned numbers. Accordingly, judgment on the pleadings should be granted and Plaintiff's Amended Complaint should be dismissed with prejudice.

### 3. Judgment on the Pleadings is Also Warranted Because the Amended Complaint Fails to Plausibly Allege that Kohl's Used an ATDS to Call Him

Plaintiff's TCPA claim requires that a call or text be placed using an ATDS. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The Amended Complaint should be dismissed because it fails to state a claim without the aid of the FCC's now-vacated definition of an ATDS. Following *ACA Int'l*, numerous courts have dismissed TCPA claims where, like here, the defendant was alleged to have used a predictive dialer to call numbers from a list, rather than a dialer that is also capable of actually *generating* "random" or "sequential" numbers. This Court should do the same. Plaintiff does not allege, because he cannot validly allege, that Kohl's used an ATDS in violation of the TCPA to place the calls to the Number.

The TCPA requires that to constitute an ATDS (and thus fall within the TCPA's ambit), equipment must have the "capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In orders dating back to 2003, the FCC impermissibly expanded this definition to include "predictive dialing" equipment that calls numbers from a list, but which lacks the ability to actually generate random or

10

DMWEST #18009363 v1

sequential numbers, as the plain text of the statute requires. *See In re Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C.R. 14014, 2003 WL 21517853 (1993) ("2003 FCC Order"); *Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991,* 23 F.C.C.R. 559, 2008 WL 65485 (2008) ("2008 FCC Order"); *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 15391, 2012 WL 5986338 (2012) ("2012 FCC Order"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 F.C.C.R. 7961, 2015 WL 4387780 (2015) ("2015 FCC Order"). These orders dramatically expanded the scope of the TCPA from its original text.  In 2003, the FCC provided a number of different tests for what constitutes an ATDS under the statute, including whether the equipment can dial "at random, in sequential order, or from a database of numbers," whether it can "store or produce telephone numbers … using a random or sequential number generator," and whether it can "dial numbers without human intervention." 2003 Order ¶¶ 131-33.   In 2008, the FCC found that a predictive dialer constitutes an ATDS, but did not explain how this could be so where the predictive dialer in question lacks the capacity to generate random or sequential numbers. 2008 Order ¶ 12.  The Commission reaffirmed these findings in 2012 and 2015. *See* 2012 Order ¶ 2 n.5; 2015 Order ¶ 10.

In *ACA Int'l*, the D.C. Circuit "set aside. . . the [FCC's] effort to clarify the types of calling equipment that fall within the TCPA's restrictions." *ACA*, 885 F.3d at 692.  In doing so, the D.C. Circuit found "[t]he impermissibility of the Commission's interpretation of the term "capacity" in the autodialer definition is compounded by inadequacies in the agency's explanation of the requisite features [of an autodialer]," thus rendering the final 2015 Order and the past orders from 2003, 2008, and 2012 unreasonable, arbitrary, and capricious. *Id.* at 701.  The 2015 Order—the order that prompted the petition for review in ACA International—"reaffirm[s]" those "prior orders." *Id.* at 694; *see also Herrick v. GoDaddy.com LLC*, 2018 WL 2229131 at *7 (D.

11

Ariz. May 14, 2018) (finding that *ACA Int'l* invalidated all prior FCC guidance on the definition of an ATDS); *Sessions v. Barclays Bank Delaware*, 2018 WL 3134439 at *4 (N.D. Ga. June 25, 2018); *Marshall v. CBE Grp., Inc.* No. 2:16-CV-02406-GMN-NJK, 2018 WL 1567852 at *5 (D. Nev. Mar. 30, 2018) (same).

Following *ACA Int'l*, the definition of an ATDS contained in the statute governs. *Marshall*, 2018 WL 1567852 at *5 ("In light of [the D.C. Circuit's] ruling, the Court will not stray from the statute's language") (internal quotations omitted). There is a distinction under the statute between equipment that can "*generate* and then dial random or sequential numbers" and the "use of equipment to call a set list of consumers." *ACA Int'l*, 885 F.3d at 701-02. A "'[r]andom or sequential number generator cannot reasonably refer broadly to any list of numbers dialed in random or sequential order, as this would effectively nullify the entire clause." *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) (internal citations omitted); see also *Herrick*, 2018 WL 2229131 at *8 ("[I]f the statute meant to only require that an ATDS include any list or database of numbers, it would simply define an ATDS as a system with the capacity to store or produce numbers to be called."). "Random number generation means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111-1111, (111) 111-1112, and so on." *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014).

In the wake of *ACA Int'l*, courts have found that the TCPA's plain language (contrary to the FCC's now invalid orders) does not cover dialers that call from lists, but only that equipment that is capable of randomly or sequentially generating numbers to be called. *See, e.g. Pinkus v. Sirius XM Radio, Inc.*, No. 16 C 10858, 2018 WL 3586186, at *8-9 (N.D. Ill. July 26, 2018) (the TCPA requires that "an ATDS must have the capacity to generate telephone numbers, either randomly or sequentially"). "[T]he FCC's rulings—including the ATDS definition which covered equipment that can only dial numbers from a set list—are no longer valid." *Gary v. TrueBlue, Inc.*, No. 17-CV-10544, 2018 WL 3647046, at *6 (E.D. Mich. Aug. 1, 2018);

12

see also *Marshall v. CBE Grp., Inc.* 2018 WL 1567852 at *5 and n.6 (D. Nev. Mar. 30, 2018).

In *Pinkus*, the defendant moved for judgment on the pleadings on the grounds that the D.C. Circuit's decision in *ACA Int'l* rendered the complaint deficient because it failed to allege facts sufficient to make it plausible that an ATDS was used to make the calls that the plaintiff received. *Pinkus*, 2018 WL 3586186, at *1. The *Pinkus* court confirmed the invalidation of the FCC's prior orders, evaluated the plain text of the TCPA, and determined that the defendant's equipment did not constitute an ATDS under the statute. It found that the phrase "using a random or sequential number generator" necessarily conveys that an ATDS must have the capacity to generate telephone phone numbers, either randomly or sequentially, and then to dial those numbers. *See id.* at *9 (citing *Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 372 (3d Cir. 2015) (holding that "'random or sequential' number generation ... refers to the numbers themselves rather than the manner in which they are dialed")). Because the complaint did not allege that the plaintiff's phone number was "randomly or sequentially generated" by the defendant, the court dismissed his ATDS claim with prejudice. *Id.*

This Court should do the same. The Amended Complaint does not allege that Kohl's produced the Number using a random or sequential number generator. Rather, Kohl's obtained the Number from one of its customers, and called Plaintiff in error attempting to communicate with one if its customers about their Kohl's charge account. (Am. Compl., ¶¶ 1, 11, 15.) Thus, because Kohl's did not use an ATDS as defined by the plan language of the TCPA to call Plaintiff, the Amended Complaint should be dismissed.

### B. If Judgment on the Pleadings is not Granted, a Stay is Warranted

As explained above, dismissal of this case is appropriate at this time in light of *ACA Int'l*. If the Court nevertheless finds that immediate dismissal is not

appropriate, it should enter a further stay of the case while the FCC addresses the issues resolved by *ACA Int'l*.

### 1. The Court's Inherent Power to Stay this Action

"Every court possesses inherent power to 'control the disposition of the causes on its docket with economy of time and effort,' which calls for the 'exercise of judgment.'" *Johnson v. Inos*, 619 F. App'x 651 (9th Cir. 2015) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). The Ninth Circuit has "sustained, or authorized in principle, *Landis* stays on several occasions." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* "So long as the 'competing interests which will be affected by the granting ... [of] a stay' continue to favor its imposition, such a stay may be entered" until a related proceeding has been resolved. *Patel v. City of Los Angeles*, 594 F. App'x 415, 416 (9th Cir. 2015). A stay is appropriate because the FCC is actively considering the issues raised in *ACA Int'l* that are dispositive of Plaintiff's TCPA claim.

### 2. A Stay is Warranted Because the FCC is Poised to Rule on Issues Dispositive of Plaintiff's TCPA Claim

On May 8, 2018, the D.C. Circuit issued its mandate to the FCC in *ACA Int'l*, officially returning the issues of the treatment of reassigned numbers and the definition of an ATDS under the TCPA to the FCC's jurisdiction. *ACA International v. Federal Communications Commission*, 15-1211 Doc. No. 1722605 (D.C. Cir. May 8,

14

2018) (RJN, **Ex. A**).[2] Even before *ACA Int'l*, the FCC had begun efforts to enact an entirely new regime to combat the difficulties presented by reassigned numbers under the TCPA. *ACA Int'l*, 885 F.3d at 709 (citing 32 FCC Rcd. 6007, 6010 ¶ 9 (2017) ("[W]e seek comment on ways we could exercise our numbering authority to require service providers to report information about number reassignments for the purposes of reducing unwanted robocalls and improving TCPA compliance.")).

The FCC's consideration of these issues accelerated following *ACA Int'l*. On March 23, 2018, the FCC issued a Second Further Notice of Proposed Rulemaking concerning reassigned numbers under the TCPA, and solicited comment on the creation of "one or more databases" for reassigned numbers. Federal Communications Commission, Second Further Notice of Proposed Rulemaking, CG Docket No. 17-59, FCC 18-31 (March 23, 2018) (RJN, **Ex. B**). The FCC is evaluating the "comprehensive and timely information . . . need[ed] to avoid calling reassigned numbers," "how to ensure that the information is reported to a database," and "the best approach to making that information available to callers." *Id.* This information is not available to callers at the present time, which is why the FCC (and the D.C. Circuit in *ACA Int'l*) found that a strict liability regime was inappropriate. On May 3, 2018, the U.S. Chamber of Commerce and 17 trade groups filed a petition for declaratory ruling requesting that the FCC "[e]xpeditiously issue a declaratory ruling to clarify the [TCPA] definition of an [ATDS]" following *ACA Int'l*. U.S. Chamber of Commerce, Petition for Declaratory Ruling, CG Docket No. 02-278, at 1 (May 3, 2018) (RJN, **Ex. C**). And, on May 14, 2018, the FCC issued a Public Notice seeking "Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision." Federal Communications

---

[2] Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Penrose v. First Magnu Fin. Corp.,* No. 318CV00276RCJVPC, 2018 WL 3550249, at *3 (D. Nev. July 24, 2018) (quoting *Mack v. S. Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986). As set forth in the concurrently filed Request for Judicial Notice, each of the documents attached to this motion are matters of public record subject to judicial notice.

15

DMWEST #18009363 v1

Commission, Public Notice, "Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision", DA 18-493 (May 14, 2018) (RJN, **Ex. D**). This Public Notice requests comment on whether devices that are only able to call numbers from a "set list" constitute an ATDS under the TCPA, and how to treat calls to reassigned wireless numbers under the TCPA.

The FCC is "poised" to rule on these matters, which could significantly simplify the legal issues for trial. *See Ankcorn v. Kohl's Corporation*, No. 1:15-cv-1303, ECF No. 78 (N.D. Ill. June 15, 2018) (staying litigation pending FCC rulemaking on reassigned numbers and the definition of an ATDS under the TCPA) (RJN, **Ex. E**). Plaintiff does not allege that he continues to receive calls from Kohl's, thus he will not be damaged or otherwise face hardship by the granting of a stay. Accordingly, should the Court refuse to dismiss the Amended Complaint, it should stay this litigation pending the FCC's anticipated rulemaking.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DMWEST #18009363 v1

## IV. CONCLUSION

For the reasons set forth above, the Court should grant Kohl's motion for judgment on the pleadings and dismiss Plaintiff's Amended Complaint, with prejudice. Should the Court decline to dismiss the Amended Complaint, it should stay this action pending the FCC's consideration of the issues dispositive of Plaintiff's TCPA claim.

Dated: August 16, 2018　　　　Respectfully submitted,

By: /s/ Lauri Mazzuchetti
Lauri Mazzuchetti, Esq. (*pro hac vice*)
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
E-Mail: lmazzuchetti@kelleydrye.com

Abran E. Vigil
Nevada Bar No. 7548
Brianna Smith
Nevada Bar No. 11795
BALLARD SPAHR LLP
1980 Festival Plaza Drive, Suite 900
Las Vegas, Nevada 89135
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
E-Mail: vigila@ballardspahr.com
E-Mail: smithbg@ballardspahr.com

*Attorneys for Defendant*
*Kohl's Department Stores, Inc.*

17

DMWEST #18009363 v1

## CERTIFICATE OF SERVICE

I certify that on August 16, 2018 and pursuant to FRCP 5, a true copy of the foregoing MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE FOR STAY was filed via the Court's CM/ECF System and electronically served by the Court on all parties in interest.

Craig K. Perry
CRAIG K. PERRY & ASSOCIATES
8010 W. Sahara Avenue, Suite 260
Las Vegas, NV 89117
(702) 228-4777

MCGUIRE LAW, P.C.
Evan M. Myers (*pro hac vice*)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
(312) 893-7002

/s/ Mary Kay Carlton
an employee of Ballard Spahr LLP

DMWEST #18009363 v1